374 So.2d 1301 (1979)
Harold D. GREGG
v.
STATE of Mississippi.
No. 51428.
Supreme Court of Mississippi.
September 19, 1979.
*1302 Jackson M. Brown, Starkville, for appellant.
A.F. Summer, Atty. Gen. by Wayne Snuggs, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROBERTSON, BROOM and COFER, JJ.
BROOM, Justice, for the Court:
Blood test results were admitted into evidence (over objection) in the Circuit Court of Oktibbeha County wherein the appellant Harold D. Gregg, Jr. (defendant herein) was convicted of manslaughter. The indictment charged him with culpable negligence in operating an automobile upon a public highway thereby causing the death of Randy Kemp. Sentenced to nine years' imprisonment, defendant Gregg appeals. We affirm.
Testimony in the record establishes that on May 18, 1978, the defendant, traveling in a westerly direction on Highway No. 12 in Oktibbeha County, unlawfully crossed over the centerline into the lane of oncoming traffic and collided with a car coming from the opposite direction (West to East). Randy Kemp, a passenger in the oncoming car, was killed in the collision. Several witnesses established that in driving a pickup truck, the defendant had passed a third vehicle and gotten back into his proper traffic lane. Then he zigzagged across the centerline from his proper lane of travel into the South lane (his wrong lane) of travel provided for eastbound traffic where the collision occurred.
Several law officers promptly arrived at the scene of the collision which occurred about 8:00 or 8:30 p.m. at night. Policeman Edmonds testified that when he arrived at the scene, he saw the defendant standing on the shoulder of the road propped up on a car. Edmonds testified that the defendant voluntarily stated that he was the driver of the pickup. According to Edmonds, the defendant Gregg smelled of alcohol, had a thick tongue, and had "trouble standing". This officer established that the weather was clear and dry. He said that it was his opinion that the defendant, who kept falling down, was intoxicated. At the scene, the defendant was given his rights after which he was arrested by Officer Edmonds.
Officer Sisk, on the night of the accident, appeared before William D. Eshee, Municipal *1303 Judge of Starkville, Mississippi, and made affidavit for a search warrant to obtain blood from the person of the defendant. After obtaining a search warrant, the officers went to the Oktibbeha County Hospital where a medical technologist, Jane Snodgrass, withdrew blood from the defendant who had refused to sign a consent form. She stated that the defendant did not appear to be intoxicated but that she didn't pay much attention to him. An expert, Dr. Arthur Hume of the Mississippi State Crime Laboratory, tested the blood extracted from the defendant for alcohol. Using a scientifically accepted test, he determined that the defendant's blood contained 0.344 percent ethyl alcohol by weight. The results of his tests were placed into evidence over objection, and after the trial court overruled the defendant's motion to suppress.
DID THE TRIAL COURT COMMIT REVERSIBLE ERROR IN ADMITTING INTO EVIDENCE RESULTS OF THE TEST MADE ON THE BLOOD EXTRACTED FROM THE DEFENDANT? The defendant argues here that the search warrant issued to search his person is void and therefore the results of the search (blood extraction and test) are inadmissible. Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) held:
[T]hat that attempt to secure evidence of blood-alcohol content in this case was an appropriate incident to petitioner's arrest. (384 U.S. at 771, 86 S.Ct. at 1836).
On this basis, the U.S. Supreme Court said that the extraction of the blood without a search warrant but as incident to a lawful arrest was proper. The stated reason was that the investigating officer might reasonably have believed that he was confronted with an emergency in which the delay necessary
[T]o obtain a warrant, under the circumstances, threatened "the destruction of evidence," Preston v. United States, 376 U.S. 364, 367, 84 S.Ct. 881, [883, 11 L.Ed.2d 777, 780.] We are told that the percentage of alcohol in the blood begins to diminish shortly after drinking stops, as the body functions to eliminate it from the system. Particularly in a case such as this, where time had to be taken to bring the accused to a hospital and to investigate the scene of the accident, there was no time to seek out a magistrate and secure a warrant. (384 U.S. at 770, 771, 86 S.Ct. at 1835-1836).
In the present case there can be no question but that the arrest of the defendant Gregg was a lawful arrest.[1] This is true because when Officer Edmonds first observed Gregg, he was "propped up" against a vehicle on the side of the road; spoke with a thick tongue and had trouble standing; smelled of alcohol; and in Edmonds' opinion was intoxicated. It was under those circumstances that Gregg told Edmonds that he was driving the vehicle which Edmonds observed in the ditch. Upon such facts, the arrest of Gregg was legal. Yet there is another reason why the arrest was legal: Gregg was drunk in a public place in the presence of two or more persons. The offense (drunkenness) occurred on a public highway in the presence of Officer Edmonds and, according to the testimony of defendant's own witness, Edwards, it was in the presence of himself (Edwards) and at least two officers. Ewing v. State, 300 So.2d 916, 919 (Miss. 1974). Edwards admitted smelling alcohol on Gregg. Under such circumstances the law officers were duty bound to arrest Gregg and use all reasonable means to discover and gather relevant evidence pertaining to Gregg's unlawful acts, including his connection with the tragic collision which had so recently occurred.
The arrest being legal under Schmerber, supra, the officers had the right to react reasonably to the emergency situation which was that the potential loss of evidence caused by the fact that "the percentage of alcohol in the blood begins to *1304 diminish shortly after the drinking stops." 384 U.S. at 770, 86 S.Ct. at 1836. Given a legal arrest and an emergency, the officers could without any warrant attempt to secure evidence of blood-alcohol content as an appropriate incident to that arrest. Safety of people traveling upon our highways is a matter of great concern to the state. Public policy mandates that law officers use all reasonable means to investigate and apprehend traffic violators.
Study of the present record reveals that according to the testimony of several state witnesses, accepted by the jury, the defendant was intoxicated. Their testimony also established the relevance and likely success of a test of his blood for alcoholic content, as was true in Schmerber, supra. The officers here were also faced with an emergency situation in that critical evidence (alcoholic content of Gregg's blood) would be lost if they did not extract his blood. Schmerber held that the extraction of blood in a hospital environment and according to accepted medical practices was both a reasonable test for blood-alcohol level and a reasonable means of performing that test. Here the extraction of blood conformed to Schmerber as to the environment and medical practices employed. The entire context of the death of Randy Kemp related to events pertaining to Gregg which occurred upon a public highway where no one has a right to expect the same degree of privacy as within a home or place of residence.
The fact that the officers, acting out of an abundance of caution, went before a magistrate and obtained a search warrant avails nothing in favor of the defendant even if it were admitted that the warrant was void. Testimony in the record overwhelmingly establishes that the officers had a legal right to arrest the defendant for either of two misdemeanors. Additionally they had every reason to believe that a felony (manslaughter) including intoxication had just been committed. Under the exigencies of the situation existing they had probable cause to believe that a blood test would scientifically and objectively reveal the defendant's degree of intoxication, a critical issue. Therefore, regardless of any possible lack of validity of the search warrant, the extraction of blood from the defendant was a lawful and appropriate incident to his legal arrest. We adopt the rationale of Schmerber and hold that the facts of the present case do not bring it within acts prohibited by the portions of the Mississippi and U.S. Constitutions referred to in the briefs before us.[2] In Schmerber, supra, the United States Supreme Court clearly sets forth its holding that under appropriate circumstances search warrants are valid and proper "where intrusions into the human body are concerned." However, our decision here upholds the "intrusion" into Gregg's body (extracting blood) as an incident to the officer's lawful arrest of him and the prevailing exigencies.
The second argument urged by the defendant here is that the lower court should be reversed because of its action in allowing into evidence testimony where the defendant refused to submit to the blood test. Without citing the place in the record where the alleged error occurred, the defendant makes the assertion that evidence of the blood test and the defendant's refusal to sign the form "was inadmissible as prejudicial." Our review of the record shows that when Mary Matthes testified that Gregg refused to sign the consent form (at which time he uttered an obscenity), no objection appears in the record. There being no objection made by the defense when this evidence was allowed to go to the jury, the defense is now without standing to argue the proposition as a basis for a reversal here.
*1305 Assertion is made that certain photographs and diagrams of the scene of the accident were improperly admitted into evidence because they contained certain errors and omissions. It is true that the diagram which was admitted into evidence did not show road lines, utility poles, broken pavement, elevation of the highway and debris but on direct and cross examination Officer Agnelly explained all of the alleged discrepancies and omissions. His testimony (Agnelly's) simply indicates that he did not consider it to be necessary that he put on the diagram all of the utility poles, elevation data, and some of the other physical facts. The defendant argues that the omissions were "to the detriment" of him but fails to precisely demonstrate just how or in what manner he was prejudiced. In this state of the record, we cannot say that the trial judge violated the sound discretion vested in him when he admitted the items into evidence. This is especially true here where the defense was allowed to thoroughly cross examine the officers who made the diagrams and took the pictures.
The next argument made is that the court erred in refusing to grant defense instructions 13 and 14. As stated in counsel's brief, by the instructions the defense "hoped to appraise the jury of the fact that manslaughter may be considered to be either of the following: (1) a misdemeanor punishable by not more than one year in the County Jail, and a fine of not more than $500.00, or both; or (2) a felony... ." We conclude that the lower court correctly refused to grant the instructions which erroneously described manslaughter as a misdemeanor or a felony. As we held in Anthony v. State, 349 So.2d 1066, 1067 (Miss. 1977), an offense for which punishment is imprisonment in the penitentiary or by fine or confinement in the county jail is a felony. Accordingly, rejection of instructions 13 and 14 did not constitute error.
Another proposition argued by the defense is that the court erred in granting state's instruction No. 1 which defined culpable negligence. Although no objection was made to the instruction at the trial level, we have considered the argument that the instruction is not supported by the evidence. We find no error here and point out that the actions of the defendant in zigzagging across the centerline of the highway into the wrong lane of traffic together with the other evidence amply supported the instruction and established beyond a reasonable doubt his guilt of the crime of manslaughter by culpable negligence.
Lastly, an argument is made in behalf of the defendant that the sentence imposed "is too severe." There is no merit to this contention because the sentence imposed was less than one-half of the maximum penalty provided by the statute under which the defendant was charged.
There being no reversible error in the record, Gregg's conviction and sentence must be affirmed.
AFFIRMED.
PATTERSON, C.J., SMITH, and ROBERTSON, P. JJ., and SUGG, WALKER, LEE, BOWLING and COFER, JJ., concur.
NOTES
[1] See Jackson v. State, 310 So.2d 898 (Miss. 1975) which held that as an incident to a lawful arrest, the arrestee may be given a sobriety test following arrest for an offense committed in the presence of an arresting officer.
[2] Cited in the briefs as authority for the proposition that warrants for the search of a person are void are several Mississippi cases: Scott v. State, 266 So.2d 567 (Miss. 1972); Burnside v. State, 144 Miss. 405, 110 So. 121 (1926); Robinson v. State, 143 Miss. 247, 108 So. 903 (1926); Duckworth v. Town of Taylorsville, 142 Miss. 440, 107 So. 666 (1926); and Comby v. State, 141 Miss. 561, 106 So. 827 (1926). Dicta in these cases may support the proposition relied upon but none held that a warrant to search a person is per se void.