STATE of Wisconsin, Plaintiff-Appellant-Petitioner,

v.

David J. BOHLING, Defendant-Respondent.

Supreme Court

*No. 91–0811–CR.  Oral argument November 4, 1992.—Decided
January 26, 1993.*

(Also reported in 494 N.W.2d 399.)

532

For the plaintiff-appellant-petitioner the cause was argued by *James M. Freimuth,* assistant attorney general with whom on the briefs was *James E. Doyle,* attorney general.

For the defendant-respondent there was a brief and oral argument by *Keith A. Findley,* assistant state public defender.

STEINMETZ, J.   The issue in this case is whether the fact that the percentage of alcohol in a person's blood stream rapidly diminishes after drinking stops alone constitutes a sufficient exigency under the Fourth Amendment to the United States Constitution and Article I Section 11 of the Wisconsin Constitution, to justify a warrantless blood draw under the following circumstances: (1) the blood draw is taken at the direction of a law enforcement officer from a person lawfully arrested for a drunk-driving related violation or crime, and (2) there is a clear indication that the blood draw will produce evidence of intoxication.

Because this issue comes before us on undisputed facts and addresses the law of exigent circumstances, our standard of review is de novo. *State v. Drogsvold,* 104 Wis. 2d 247, 265, 311 N.W.2d 243 (Ct. App. 1981).

Applying this standard, we hold that under the foregoing circumstances the dissipation of alcohol from a person's blood stream constitutes a sufficient exigency to justify a warrantless blood draw. Consequently, a warrantless blood sample taken at the direction of a law enforcement officer is permissible under the following

533

circumstances: (1) the blood draw is taken to obtain evidence of intoxication from a person lawfully arrested for a drunk-driving related violation or crime,[1] (2) there is a clear indication that the blood draw will produce evidence of intoxication, (3) the method used to take the blood sample is a reasonable one and performed in a reasonable manner, and (4) the arrestee presents no reasonable objection to the blood draw.

Both the Dane County Circuit Court, the Honorable Daniel R. Moeser, and the court of appeals concluded otherwise, holding that the state must demonstrate additional exigent circumstances to excuse the absence of a search warrant, and that the state failed to do so in the present case. The facts leading up to these holdings are detailed below.

On August 18, 1990, Sergeant ("Sgt.") Mindham of the city of Sun Prairie Police Department was dispatched to a motor vehicle accident between David J. Bohling's vehicle and another vehicle. Because Bohling smelled of liquor, had "bloodshot eyes," and had "poor" balance, Sgt. Mindham arrested him for operating a motor vehicle while under the influence of intoxicants and transported him to the Sun Prairie Police Department.

At the· police station Bohling refused to take a breath intoxilyzer test. Sgt. Mindham then informed Bohling that blood would have to be drawn in accordance with the police department's policy of blood-testing third and subsequent drunk driving offenders who refuse to take the intoxilyzer test. When Bohling

---

[1] Probable cause to arrest substitutes for the predicate act of lawful arrest. *State v. Bentley,* 92 Wis. 2d 860, 863–64, 286 N.W.2d 153 (Ct. App. 1979).

objected, the officer informed him that restraint would be used if necessary.

Without obtaining a search warrant, Sgt. Mindham transported Bohling to a Madison hospital. Bohling refused to sign a consent form but submitted to a blood test.[2] It revealed a blood alcohol content ("BAC") of .205 percent.

Subsequently, Bohling was charged with operating a motor vehicle while intoxicated, contrary to sec. 346.63(1)(a), Stats.,[3] and with operating a motor vehicle while having an illegal blood alcohol content in his body, contrary to sec. 346.63(1)(b).[4] If proven, these charges constitute Bohling's third drunk driving offense in a five-year period and therefore are misdemeanors subject to the penalties of sec. 346.65(2)(c).[5]

---

[2] The state concedes that these actions do not constitute consent to the blood draw.

[3] Section 346.63(1)(a), Stats., provides as follows:

**Operating under influence of intoxicant or other drug.** **(1)** No person may drive or operate a motor vehicle while:

(a) Under the influence of an intoxicant or a controlled substance or a combination of an intoxicant and a controlled substance, under the influence of any other drug to a degree which renders him or her incapable of safely driving, or under the combined influence of an intoxicant and any other drug to a degree which renders him or her incapable of safely driving . . ..

[4] Section 346.63(1)(b), Stats., provides as follows:

(b) The person has a blood alcohol concentration of 0.1% or more by weight of alcohol in that person's blood or 0.1 grams or more of alcohol in 210 liters of that person's breath.

[5] Section 346.65(2)(c), Stats., provides as follows:

(c) Shall be fined not less than $600 nor more than $2,000 and imprisoned for not less than 30 days nor more than one year in the county jail if the total of revocations under s. 343.305(10)(b) and convictions under s. 346.63(1) or a local ordinance in conformity therewith, or s. 346.63(1m), 1985 stats., or s. 346.63(2) or 940.25, or s. 940.09 where the offense involved the use of a vehicle, equals 3 in a 5-

By pretrial motion, Bohling sought to suppress the blood test results. His suppression motion was granted by the trial court. The court of appeals affirmed. This court accepted the state's petition for review. We reverse.

Our holding is based upon *Schmerber v. California,* 384 U.S. 757 (1966). To put our discussion of Schmerber in context, some background search and seizure law is explained below.

Both the Fourth Amendment to the United States Constitution and Article I Section 11 of the state constitution[6] guarantee citizens the right to be free from "unreasonable searches." "The United States Supreme Court has consistently held that warrantless searches are per se unreasonable under the fourth amendment, subject to a few carefully delineated exceptions." *State v. Murdock,* 155 Wis. 2d 217, 227, 455 N.W.2d 618 (1990).[7]

---

year period, except that revocations or convictions arising out of the same incident or occurrence shall be counted as one.

[6] The Fourth Amendment to the United States Constitution provides as follows:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Article I Section 11 of the Wisconsin Constitution provides as follows:

**Searches and seizures.** SECTION 11. The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

[7] Wisconsin courts consistently follow the United States Supreme Court's interpretation of the Fourth Amendment when construing Article I Section 11 of the state constitution. *State v.*

A search performed incident to a lawful arrest is one of those exceptions. *See Id.,* at 228; *State v. Fry,* 131 Wis. 2d 153, 169–70, 388 N.W.2d 565 (1986), *cert. denied,* 479 U.S. 989 (1986). It generally does not require justification apart from probable cause to arrest. *Id.*

Pursuant to this rule, law enforcement officers have been permitted to seize samples of an arrestee's hair, breath, and urine solely on the basis of lawful arrest. *See* 2 W. LaFave, Search and Seizure, sec. 5.3(c) at 499 (2d ed. 1987) and cases therein.

Blood constitutes a limited exception to the foregoing rule. In *Schmerber,* 384 U.S. at 770–71, the United States Supreme Court held that the Fourth Amendment permits blood to be taken incident to a lawful arrest without a warrant and over the arrestee's objection only if three requirements are met: (1) the arresting officers have a "clear indication" that the evidence they seek will be found in the arrestee's blood; (2) exigent circumstances exist; and (3) the method used to take the blood sample is "a reasonable one" and "performed in a reasonable manner."[8]

A governmental search based on "exigent circumstances," like a search incident to an arrest, is a well-established exception to the warrant requirement. *See State v. Milashoski,* 159 Wis. 2d 99, 111, 464 N.W.2d 21 (Ct. App. 1990), *aff'd,* 163 Wis. 2d 72, 471 N.W.2d 42 (1991). A well-recognized exigent circumstance is the

---

*Richardson,* 156 Wis. 2d 128, 137, 456 N.W.2d 830 (1990); *State v. Fry,* 131 Wis. 2d 153, 171–72, 388 N.W.2d 565 (1986), *cert. denied,* 479 U.S. 989 (1986).

[8] In *State v. Seibel,* 163 Wis. 2d 164, 179, 471 N.W.2d 226 (1991), *cert. denied,* 112 S. Ct. 596 (1991), we held that "clear indication" is the legal equivalent of "reasonable suspicion."

threat that evidence will be lost or destroyed if time is taken to obtain a warrant. *State v. Peardot,* 119 Wis. 2d 400, 404, 351 N.W.2d 172 (Ct. App. 1984).

The test for this particular exigency is an objective one: "Whether a police officer under . . . circumstances known to the officer at the time reasonably believes that delay in procuring a warrant would . . . risk destruction of evidence. . . ." *State v. Smith,* 131 Wis. 2d 220, 230, 388 N.W.2d 601 (1986); *see also State v. Amos,* 153 Wis. 2d 257, 270, 450 N.W.2d 503 (Ct. App. 1989). The United States Supreme Court has indicated that this test applies in the present context of a warrantless blood draw following a lawful arrest for a drunk-driving-related crime. *Schmerber,* 384 U.S. at 770.

As mentioned above, *Schmerber* is the starting point of our analysis. In *Schmerber,* the defendant was arrested for driving while intoxicated—a misdemeanor under California law. *Id.* at 758. He was taken to a hospital where the arresting officer directed a physician to take a blood sample over the defendant's objection. *Id.* at 758–59. The blood draw apparently was taken within two hours after the accident. *Id.* at 769. The BAC result based on the blood sample was admitted at the accused's trial over his objection on various grounds, including his claim of a Fourth Amendment violation. *Id.* at 759.

The *Schmerber* court determined that, in the absence of a warrant, one of the Fourth Amendment requirements for taking a blood sample is exigent circumstances. *Id.* at 770. The court concluded that exigent circumstances were present, and it stated the following:

> The officer in the present case, however, might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened 'the

destruction of evidence.' We are told that the percentage of alcohol in the blood begins to diminish shortly after drinking stops, as the body functions to eliminate it from the system. Particularly in a case such as this, where time had to be taken to bring the accused to a hospital and to investigate the scene of the accident, there was no time to seek out a magistrate and secure a warrant. Given these special facts, we conclude that the attempt to secure evidence of blood-alcohol content in this case was an appropriate incident to [the accused's] arrest.

*Id.* at 770–71. (Citation omitted.)

*Schmerber* can be read in either of two ways: (a) that the rapid dissipation of alcohol in the bloodstream alone constitutes a sufficient exigency for a warrantless blood draw to obtain evidence of intoxication following a lawful arrest for a drunk driving related violation or crime—as opposed to taking a blood sample for other reasons, such as to determine blood type; or (b) that the rapid dissipation of alcohol in the bloodstream, coupled with an accident, hospitalization, and the lapse of two hours until arrest, constitute exigent circumstances for such a blood draw.

We believe that the more reasonable interpretation of *Schmerber* is the first one set forth—exigency based solely on the fact that alcohol rapidly dissipates in the bloodstream. This conclusion rests on four supports: (1) a logical reading of *Schmerber,* (2) the Supreme Court's decision in *Skinner v. Railway Labor Executives' Assn.,* 489 U.S. 602 (1989), (3) interpretations of Schmerber by other courts, and (4) an examination of Wisconsin's interest in enforcing its drunk driving laws.

A logical analysis of the *Schmerber* decision indicates that the exigency of the situation presented was

caused solely by the fact that the amount of alcohol in a person's blood stream diminishes over time. The fact that an accident occurred and that the defendant was taken to the hospital did not increase the risk that evidence of intoxication would be lost. A hospital trip to another location at which a medically qualified person is present is standard procedure for taking a blood sample in a drunk driving case, regardless of whether an accident occurred. See sec. 343.305(5)(b), Stats.[9]

Our interpretation of *Schmerber* is also supported by the United States Supreme Court's later decision in *Skinner,* 489 U.S. 602. The court recognized in *Skinner,* in the context of a warrantless blood draw, that the Fourth Amendment warrant requirement is relaxed when the activity at issue constitutes a serious risk to public safety. Because of this public safety risk, persons engaging in such activities have a reduced expectation of privacy.

More specifically, the Court upheld against a Fourth Amendment attack, a Federal Railroad Administration regulation that in relevant part requires toxicological testing of the blood of all railroad employees directly involved in any train accident that results in a reportable injury or damage to railroad property. *Id.* at 609. The Court concluded that a warrant is not a prerequisite to

---

[9] Section 343.305(5)(b), Stats., provides as follows:

Blood may be withdrawn from the person arrested for violation of s. 346.63(1), (2), (2m), (5) or (6) or 940.25, or s. 940.09 where the offense involved the use of a vehicle, or a local ordinance in conformity with s. 346.63(1), (2m) or (5), or as provided in sub. (3)(am) or (b) to determine the presence or quantity of alcohol, a controlled substance, a combination of alcohol and a controlled substance, any other drug or a combination of alcohol and any other drug in the blood only by a physician, registered nurse, medical technologist, physician's assistant or person acting under the direction of a physician.

such testing. *Id.* at 624–25, 631. In support of this conclusion, the Supreme Court suggested that railroad employees have a reduced expectation of privacy by virtue of their employment and the public safety interest involved. *Id.* at 627.

Likewise, in the context of driving on public highways, public safety concerns reduce a driver's expectation of privacy. In fact, the Wisconsin legislature explicitly recognizes this reduced expectation of privacy. It has concluded that all drivers lawfully arrested for drunk driving have impliedly consented to blood sampling, sec. 343.305(2), Stats.,[10] and that warrantless blood samples may be taken from unconscious drivers based solely on probable cause. Section 343.305(3)(b), Stats.[11]

---

[10] Section 343.305(2), Stats., provides as follows:

IMPLIED CONSENT. Any person who is on duty time with respect to a commercial motor vehicle or drives or operates a motor vehicle upon the public highways of this state, or in those areas enumerated in s. 346.61, is deemed to have given consent to one or more tests of his or her breath, blood or urine, for the purpose of determining the presence or quantity in his or her blood or breath, of alcohol, controlled substances, a combination of alcohol and controlled substances, other drugs or a combination of alcohol and other drugs when requested to do so by a law enforcement officer under sub. (3)(a) or (am) or when required to do so under sub. (3)(b). Any such tests shall be administered upon the request of a law enforcement officer. The law enforcement agency by which the officer is employed shall be prepared to administer, either at its agency or any other agency or facility, 2 of the 3 tests under sub. (3)(a) or (am), and may designate which of the tests shall be administered first.

[11] Section 343.305(3)(b), Stats., provides as follows:

A person who is unconscious or otherwise not capable of withdrawing consent is presumed not to have withdrawn consent under this subsection, and if a law enforcement officer has probable cause to believe that the person has violated s. 346.63(1), (2m) or (5) or a local ordinance in conformity therewith, or s. 346.63(2) or (6) or 940.25, or s. 940.09 where the offense involved the use of a vehicle, or detects any presence of alcohol, controlled substance or other drug, or a combination thereof, on a person driving or operating or on duty

Other courts have similarly construed *Schmerber.* The Wisconsin Court of Appeals examined the exigent circumstance requirement in *State v. Bentley,* 92 Wis. 2d 860, 861–62, 286 N.W.2d 153 (Ct. App. 1979). In *Bentley,* the defendant was charged with two counts of homicide by intoxicated use of a motor vehicle and three counts of injury by intoxicated use of a motor vehicle contrary to sec. 940.09, Stats. 1977 and sec. 940.25, 1977, respectively. After the automobile accident leading up to these charges, the defendant was transported to an Eau Claire hospital. At the direction of a police officer and over the defendant's objections, a hospital technician took a blood sample from the defendant. The defendant moved to have the test results of the blood sample suppressed. The trial court granted his motion. *Id.* at 861–62. The court of appeals reversed. *Id.* at 865. Citing *Schmerber,* the court noted that for a warrantless blood draw to be admissible, it "must have been required by the exigencies of the situation." *Id.* at 864. It went on to find that this requirement was satisfied merely because the amount of alcohol in a person's blood stream rapidly diminishes once drinking stops. It stated that "[b]lood rapidly metabolizes alcohol after a person ceases drinking; thus creating an exigent situation." *Id.*

The Fourth Circuit also concurs with our interpretation of *Schmerber.* In *United States v. Reid,* 929 F.2d 990, 991–92 (4th Cir. 1991), which is the consolidation of two cases, the defendants were separately convicted in federal district court of drunk driving offenses under 36 CFR sec. 4.23 that did not involve accidents or injuries. In each case, breathalyzer testing apparently followed within an hour after arrest. The defendants challenged

time with respect to a commercial motor vehicle or has reason to believe the person has violated s. 346.63(7), one or more samples specified in par. (a) or (am) may be administered to the person.

the admission of breathalyzer test results under the Fourth Amendment, arguing that police should have sought telephonic warrants under Fed. R. Crim. P. 41(c)(2). *Id.*

The Fourth Circuit rejected the defendant's arguments and held that the BAC evidence was admissible. *Id.* at 994–95. The court first reviewed the facts of *Schmerber* and noted that *Schmerber* constitutes an example of exigent circumstances which justify a warrantless blood draw. *Id.* at 993. The court then reasoned that the exigency of *Schmerber* was caused by the fact that alcohol is eliminated from the blood stream at a constant rate. It stated that "[t]ime is what is lacking in these circumstances: '[A]lcohol and other drugs are eliminated from the blood stream at a constant rate, and blood and breath samples taken to measure whether these substances were in the bloodstream when a triggering event occurred must be obtained as soon as possible.' " *Id.* at 993 (quoting in part *Skinner,* 489 U.S. at 623). It further reasoned that obtaining a telephonic warrant still takes time and therefore did not alter the exigencies of the defendant's case. *Id.* Consequently, the defendant's blood draw was a permissible search. *Id.* at 994. The court did not note any difference between *Schmerber* where an accident occurred, and the instant case where no accident occurred.

The Maine Supreme Court followed *Bentley* and *Reid* in *State v. Baker,* 502 A.2d 489 (Me. 1985). In that case, the accused was a driver injured in a collision that killed a passenger in the accused's car. The accused was taken to the hospital, and a blood sample was taken without his consent. *Id.* at 490–91. In upholding the constitutionality of the search, the Maine Supreme Court stated that "[t]he bodily process that eliminates alcohol . . . provides exigent circumstances obviating the

need to obtain a warrant prior to administering a blood test." *Id.* at 493. No mention was made of the time needed to obtain a warrant or the fact that police acquired probable cause within a short time after the accident.

The Oregon Supreme Court adopted a similar interpretation of the exigent circumstance requirement in *State v. Milligan,* 304 Or. 659, 748 P.2d 130, 134–35 (1988). In *Milligan,* the accused drove his car into a power pole, killing his passenger. The accused, who was conscious, was taken to a hospital where two blood samples were drawn without consent or a warrant. *Id.* at 131–32. In upholding the search, the Oregon Supreme Court explained that "[i]n order to determine accurately the level of alcohol in a suspect's blood at the time of the alleged crime, the police must obtain an initial sample of the suspect's blood with as little delay as possible." *Id.* at 134. Once again, neither the time necessary to procure a warrant nor the time necessary to obtain probable cause was discussed as being relevant to a determination of the exigency for the blood sample. Nor was the fact of an accident identified as being critical to such determination.

The Mississippi Supreme Court also concurs with this interpretation of the exigent circumstance requirement. In *Gregg v. State,* 374 So. 2d 1301, 1302 (Miss. 1979), the accused was arrested at the scene of a traffic fatality for "culpable negligence in operating an automobile" based on evidence that he was intoxicated. A search warrant was obtained, and a blood sample was taken. *Id.* at 1303. The accused thereafter challenged the validity of the warrant. The Mississippi Supreme Court concluded that the validity of the warrant was irrelevant, because the search could have been made without a warrant based solely on the "potential loss of evidence

caused by the fact that 'the percentage of alcohol in the blood begins to diminish shortly after drinking stops.' " *Id.* at 1303–04 (quoting *Schmerber,* 384 U.S. at 770).

Commentators have consistently interpreted the exigency pronouncement of *Schmerber* in the same way. *See e.g.,* Kevin P. Colleran, Casenote, *Constitutional Law—Constitutionality of Blood Test Performed over Objection of Intoxicated Driver—Schmerber v. California, 384 U.S. 757 (1966),* 46 Neb. L. Rev., 161, 173 (1967) ("It is doubtful that in a [drunk-driving] situation where a blood test is relevant, a magistrate will ever be necessary for the issuance of a warrant; if the situation did arise it would be rare."); *see also,* Carl A. Eklund, Casenote, *Constitutional Law—Search and Seizure—Nonconsensual Drawing of Blood for Evidential Purposes—Schmerber v. California, 384 U.S. 757 (1966),* 16 Am. U. L. Rev. 136, 138–39 (1966); Raymond L. DeGasperi & James P. Regan, Comment, *Constitutional Law-Blood-Alcohol Tests: Some Constitutional Aspects,* 35 UMKC L. Rev. 175, 181 (1967).

We also note that our interpretation of Schmerber makes sense from a policy standpoint. It strikes a favorable balance between an individual's right to be free from unreasonable searches and Wisconsin's interest in enforcing its drunk driving laws. Wisconsin's interest is vital whereas the resulting intrusion on individual privacy is minimal.

Obviously, enforcing drunk driving laws is a significant state interest. No supporting authority is necessary to identify the significant toll that drunken drivers have exacted on the American public in loss of life, limb, and property.

**[9]**

Because the probative value of BAC evidence is diminished by delayed testing, our holding facilitates the state's ability to protect this interest. The diminished evidentiary value of an untimely blood test is expressly recognized in the Wisconsin statutes. Under sec. 885.235(1), Stats., the result of a blood alcohol test based on a blood sample obtained from a drunk-driving suspect "within 3 hours after the event to be proved" is admissible at the suspect's trial without expert testimony. If the sample was obtained more than three hours later, the test result is admissible "only if expert testimony establishes its probative value." Section 885.235(3), Stats.

Even if a blood sample is taken within the aforementioned three-hour interval, the evidentiary value of the test result may be undermined by delay. Under sec. 885.235, Stats., the key BAC numbers are .04 percent ("relevant" evidence of intoxication) and .10 percent ("prima facie" evidence of intoxication).

Delayed testing can significantly prejudice the state's case, if the accused's BAC level drops below the above-mentioned critical amounts before a blood test is administered. Although delayed test results can be used to estimate BAC level at the time of the alleged criminal conduct, such extrapolations can be speculative. "It is scientifically established that alcohol is absorbed at different rates by different people and that a variety of factors affect the rate at which alcohol is absorbed by a given person at a given time." Wis. JI-Criminal 2660–2665, *Introductory Comment,* at 13–14, *see also* Jennifer Pariser, Note, *In Vino Veritas: The Truth About Blood Alcohol Presumptions in State Drunk Driving Law,* 64 N.Y.U. L. Rev. 141, 152 n.76 (1989); Robert L. Donigan, Chemical Tests and the Law 44 (2d ed. 1966).

Delay in obtaining a blood sample also creates potential problems for drunk-driving defendants. It is recognized that a person's BAC level initially rises for a period of time after drinking stops while alcohol is being absorbed. *See State v. Vick,* 104 Wis. 2d 678, 683–85, 312 N.W.2d 489 (1981). If a blood sample is not obtained soon after the alleged drunk-driving offense, a defendant may be hampered in demonstrating that, at the time of the alleged offense, alcohol was still being absorbed into the bloodstream and that, therefore, his BAC was actually lower than that obtained by chemical testing of the blood sample. *See Id.* at 683–85; Wis. JI-Criminal 2660–2665, *Introductory Comment,* at 14.

On the other hand, "blood tests do not constitute an unduly extensive imposition on an individual's personal privacy and bodily integrity," especially when performed according to accepted practices by trained medical personnel at a hospital. *Winston v. Lee,* 470 U.S. 753, 762 & n.5 (1985).

> Extraction of blood samples for testing is a highly effective means of determining the degree to which a person is under the influence of alcohol. Such tests are a commonplace in these days of periodic physical examinations and experience with them teaches that the quantity of blood extracted is minimal, and that for most people the procedure involves virtually no risk, trauma, or pain.

*Schmerber,* 384 U.S. at 771 (citation omitted).

We hold that the dissipation of alcohol from a person's bloodstream constitutes a sufficient exigency to justify a warrantless blood draw under the following cir-

cumstances: (1) the blood draw is taken at the direction of a law enforcement officer from a person lawfully arrested for a drunk-driving related violation or crime, and (2) there is a clear indication that the blood draw will produce evidence of intoxication.

*By the Court.*—The decision of the court of appeals is reversed.

SHIRLEY S. ABRAHAMSON, J. (*dissenting*). The issue in this case is a narrow one: When a person is lawfully arrested without a warrant for operating a motor vehicle while intoxicated (whether a crime or civil forfeiture), under what circumstances may the state order that the operator's blood be drawn without a search warrant?[1] The majority responds that in every lawful arrest for operating while intoxicated "exigent circumstances" exist to justify an intrusion into the operator's body without a search warrant. According to the majority, exigent circumstances exist solely because "alcohol rapidly dissipates in the bloodstream." Majority op. at 539. Thus the majority opinion holds that the exigency created by the dissipation of alcohol makes seizure of a blood sample without a warrant reasonable *per se* under the Fourth Amendment.

I agree with the holdings of the circuit court and the court of appeals: the *per se* rule urged by the state and adopted by the majority violates the Fourth Amendment. I further agree with the circuit court and the court of appeals that to justify a warrantless extraction of the operator's blood upon a lawful warrantless arrest of oper-

---

[1] The same evidence that gave the law enforcement officer probable cause to make the arrest would give the officer probable cause to believe that an analysis of the operator's blood would yield evidence.

ating a vehicle while intoxicated, the state must prove that it could not have obtained a search warrant without destruction of the evidence.[2] This holding satisfies both the Fourth Amendment and the public interest in prosecuting drunk drivers.

I conclude, as did the other two courts, that a search warrant is required under the facts of this case. My reasoning is as follows:

1.   The drawing of blood is a seizure that must comply with the Fourth Amendment of the federal Constitution. *Schmerber v. California,* 384 U.S. 757 (1966).

2.   A warrantless seizure is unreasonable under the Fourth Amendment unless it falls within one of the exceptions to the warrant requirement.[3]

3.   One exception to the Fourth Amendment warrant requirement is the existence of exigent circumstances. The exigent circumstances exception is narrow, and the state's burden to prove the existence of exigent circumstances is heavy. *Welsh,* 466 U.S. at 750.

4.   The exigent circumstances exception may be applied to the seizure of blood. *Schmerber,* 384 U.S. at 770–71; Majority op. at 537. Because the percentage of alcohol in the blood begins to diminish shortly after a person stops drinking intoxicating beverages, delay in

---

[2] See *State v. Moylett,* 836 P.2d 1329, 1335 (Or. 1992).

[3] In *Schmerber* the Court analogized the drawing of blood to the search of a personal residence and concluded that "search warrants are ordinarily required for searches of dwellings, and absent an emergency, no less could be required when intrusions into the human body are concerned." *Schmerber v. California,* 384 U.S. at 770.

In *Welsh v. Wisconsin,* 466 U.S. 740, 749 (1984), quoting *Payton v. New York,* 445 U.S. 573, 586 (1979), the Court stated that "searches and seizures inside a home without a warrant are presumptively unreasonable."

taking the blood sample may, in some cases, imperil the evidence of blood alcohol concentration.

5.  Exigent circumstances justify the seizure of blood without a warrant when the arresting officer reasonably believes that delay caused by securing a warrant could result in the destruction of evidence. Majority op. at 538. *Schmerber,* 384 U.S. at 770–71, teaches that law enforcement officers and courts must examine the facts of each case to determine whether the delay in obtaining a search warrant would hamper the procurement of evidence.

6.  In this case there was sufficient time to secure a warrant without risking the destruction of the evidence of intoxication. Therefore this case does not fall within the exigent circumstances exception.

First, the certainty that alcohol "disappears" over a period of time does not automatically justify a warrantless invasion of a person's body. As Judge Sundby explains in the court of appeals' opinion, alcohol dissipates over a fairly long period.[4] It takes time before an individual attains a peak blood alcohol concentration, and it takes five hours to eliminate all alcohol from the blood of a suspect having a blood alcohol concentration of .10 percent when arrested. Furthermore, expert testimony can predict the rate of dissipation of alcohol in the blood of a particular person. Thus, the arrestee's blood alcohol concentration at the time of operation of a vehicle can be established from a blood sample obtained a considerable time after operation.[5]

---

[4] "When we talk about 'destruction' of the evidence of intoxication, we are talking about hours." *State v. Welsh,* 108 Wis. 2d 319, 357, 321 N.W.2d 245 (1982) (Abrahamson, J., dissenting), rev'd, *Welsh v. Wisconsin,* 466 U.S. 740 (1984).

[5] For discussions of absorption and dissipation of alcohol in the blood, *see, e.g.,* Pariser, *In Vino Veritas: The Truth About*

Second, the state did not show that there was insufficient time to obtain a warrant. According to the record, the defendant was in custody for almost two and one-half hours before the blood sample was taken. About an hour and 15 minutes elapsed between the defendant's refusal to allow blood to be drawn and the taking of the blood sample.[6] Although a warrant can be obtained through expedited telephone procedures in Wisconsin, sec. 968.12(3), Stats. 1989–90, the officers made no attempt to obtain a warrant.[7] The state had the burden to show that there was insufficient time to use the tele-

_Blood Alcohol Presumptions in State Drunk Driving Law,_ 64 N.Y.U. L. Rev. 141 (1989); Note, _Shed Thou No Blood: The Forcible Removal of Blood Samples from Drunk Driving Suspects,_ 60 S. Cal. L. Rev. 1115 (1987).

[6] The law enforcement officer in this case believed that because of the dissipation of alcohol in the blood he had to get a sample within three hours of the accident. Under sec. 885.235(1), Stats. 1989–90, if the sample is taken within three hours after the event to be proved, the test results are admissible without expert testimony. If the blood sample is not taken within three hours after the event to be proved, the test results may be admissible if expert testimony establishes its probative value. Section 885.235 (3), Stats. 1989–90.

[7] The legislative intent behind the telephonic warrant procedure is to encourage use of warrants and minimize resort to warrantless searches when circumstances might otherwise be exigent. _United States v. Talkington,_ 843 F.2d 1041, 1046–47 (7th Cir. 1988) (quoting Advisory Committee Notes to 1977 Amendment to Federal Rule 41). The Wisconsin telephonic warrant procedure is modeled after the federal rule.

phonic search warrant procedure.[8] It failed to carry that burden.[9]

For these reasons, I dissent and join the circuit court and the court of appeals in holding that the failure to obtain a search warrant in this case violated the Fourth Amendment. I am authorized to state that Chief Justice NATHAN S. HEFFERNAN and Justice WILLIAM A. BABLITCH join this dissent.

---

[8] The Seventh Circuit Court of Appeals has held that the government in meeting its burden of showing exigent circumstances in a warrantless search of premises must demonstrate affirmatively that it was impractical to obtain a telephonic warrant. See, *e.g.*, *United States v. Talkington,* 843 F.2d 1041, 1045–47 (7th Cir. 1988); *United States v. Patino,* 830 F.2d 1413, 1416 (7th Cir. 1987); *United States v. Diaz,* 814 F.2d 454, 457 (7th Cir.), cert. den., 484 U.S. 857 (1987).

[9] *Skinner v. Railway Labor Executives' Assn.,* 489 U.S. 602, 623 (1989), does not establish, as the majority opinion asserts, that exigent circumstances are present whenever public safety is furthered through procurement of a blood sample. *Skinner* approved federal regulations mandating warrantless blood and urine tests of railroad employees following rail accidents. The decision was not based, however, on principles applicable to the investigation of crimes. The Court emphasized that the usual warrant and individualized suspicion rules in criminal cases were inapplicable to the administrative testing of railroad employees because the testing of railroad employees was not mandated "to assist in the prosecution of employees but rather 'to prevent accidents and casualties in railroad operations that result from impairment of employees by alcohol or drugs.' " *Id.* at 620–21 (note omitted).