# IN THE SUPREME COURT OF IOWA

No. 126/ 06–0880

Filed February 8, 2008

**STATE OF IOWA**,

Appellee,

vs.

**BRENT ERIC JOHNSON**,

Appellant.

---

Appeal from the Iowa District Court for Polk County, Artis Reis, Judge.

Defendant convicted of several alcohol-related offenses appeals on the ground the results of his blood-alcohol test were erroneously admitted into evidence. **AFFIRMED.**

Timothy McCarthy II of McCarthy & Hamrock, P.C., West Des Moines, for appellant.

Thomas J. Miller, Attorney General, Bridget A. Chambers, Assistant Attorney General, John P. Sarcone, County Attorney, and James P. Ward, Assistant County Attorney, for appellee.

**LARSON, Justice.**

Brent Johnson was convicted of serious injury by vehicle (Iowa Code section 707.6A(4) (2005)), operating while intoxicated, third offense (Iowa Code section 321J.2(2)(*c*)), failing to stop following a personal injury accident (Iowa Code section 321.261(2)), and leaving the scene of a personal injury accident (Iowa Code section 321.263). On appeal, Johnson raises a single issue—the admission of test results from his blood sample obtained without a warrant, pursuant to Iowa Code section 321J.10A. We affirm.

### I. Facts and Prior Proceedings.

The district court, in a jury-waived trial based on the minutes of evidence and the transcript of the suppression hearing, found the following facts. On January 27, 2006, at 4:41 p.m., Johnson caused an automobile accident resulting in the serious injury of Refic Abdik. After the accident, Johnson left the scene on foot, but police officers later located him several blocks away. Johnson failed field sobriety tests, was arrested, and was transported to the Des Moines Police Department. There, at 6:25 p.m., he refused to provide a breath sample. Johnson was transported to Mercy Hospital, and at 7:20 p.m., a blood sample was taken—without his consent and without a warrant. Analysis of the blood sample showed that Johnson's blood-alcohol concentration was .250%, well over the legal limit. Johnson moved to suppress the results of the test, complaining the "emergency" required by section 321J.10A(1) for obtaining a blood sample without a warrant was not established. The district court denied the motion, concluding an emergency situation existed sufficient to justify the warrantless seizure of Johnson's blood.

## II. Discussion.

Iowa Code section 321J.6, our implied-consent statute, authorizes law enforcement officers to obtain a sample of a driver's blood, breath, or urine for purposes of chemical testing for intoxication when there are reasonable grounds to believe the driver is intoxicated. On a refusal to submit to such testing, the driver's license may be revoked. Iowa Code § 321J.9. However, withdrawal of a specimen of blood, breath, or urine for chemical testing is permitted over the individual's objection pursuant to a search warrant when a traffic accident has resulted in death or injury reasonably likely to cause death, and there are reasonable grounds to believe that at least one of the drivers at fault for the accident was intoxicated. Iowa Code § 321J.10A. In 2004, the legislature enacted section 321J.10A(1), which permits the withdrawal of blood without a warrant under certain circumstances. Section 321J.10A(1) provides:

> Notwithstanding section 321J.10 [requiring a warrant to obtain a blood sample in the absence of consent], if a person is under arrest for an offense arising out of acts alleged to have been committed while the person was operating a motor vehicle in violation of section 321J.2 or 321J.2A, and that arrest results from an accident that causes a death or personal injury reasonably likely to cause death, a chemical test of blood may be administered without the consent of the person arrested to determine the amount of alcohol or a controlled substance in that person's blood if all of the following circumstances exist:
>
>     *a.* The peace officer reasonably believes the blood drawn will produce evidence of intoxication.
>
>     *b.* The method used to take the blood sample is reasonable and performed in a reasonable manner by medical personnel under section 321J.11.
>
>     *c.* The peace officer reasonably believes the officer is confronted with an emergency situation in which the delay necessary to obtain a warrant under section 321J.10 threatens the destruction of the evidence.

In this case, it is undisputed that the accident caused an injury reasonably likely to cause death (medical evidence showed that the victim would likely die), and the method used to take the blood sample (by medical personnel) was reasonable. Thus, requirements (*a*) and (*b*) of section 321J.10A(1) were satisfied, and the defendant does not contend otherwise. The only issue is whether the requirement of subsection (*c*) has been satisfied, i.e., whether the peace officer reasonably believed he was confronted with an emergency situation in which the delay necessary to obtain a warrant threatened the destruction of evidence. This case presents an issue of first impression in the application of Iowa Code section 321J.10A(1).

**A. The Exigency Argument.** The issue raised in this case was addressed by the United States Supreme Court in *Schmerber v. California*, 384 U.S. 757, 86 S. Ct. 1826, 16 L. Ed. 2d 908 (1966). In *Schmerber* the Court concluded that the warrantless withdrawal of blood from an individual implicates the Fourth Amendment to the United States Constitution. It said, "[t]he overriding function of the Fourth Amendment is to protect personal privacy and dignity against unwarranted intrusion by the State," and the extraction of blood "plainly constitute[s a search] of 'persons' and depend[s] antecedently upon seizures of 'persons,' within the meaning of that Amendment." *Schmerber*, 384 U.S. at 767, 86 S. Ct. at 1834, 16 L. Ed. 2d at 918. Despite Fourth Amendment implications, the Court recognized that alcohol naturally dissipates from the body shortly after its consumption and concluded the warrantless seizure of blood for purposes of chemical testing may be justified by the exigent-circumstances exception to the warrant requirement of the Fourth Amendment. The Court stated that the police officer in *Schmerber* "might reasonably have believed that he

was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened 'the destruction of evidence.'" *Id.* at 770, 86 S. Ct. at 1835, 16 L. Ed. 2d at 919–20 (quoting *Preston v. United States*, 376 U.S. 364, 367, 84 S. Ct. 881, 883, 11 L. Ed. 2d 777, 780 (1964)). The wording of the Iowa statute tracks closely with the language of *Schmerber*.[1]

Iowa case law has followed the rationale set forth in *Schmerber*— that the natural dissipation of alcohol from the bloodstream may be an exigent circumstance making it constitutionally permissible to obtain a blood sample without a search warrant. *See State v. Legg*, 633 N.W.2d 763, 772 (Iowa 2001) (holding that "there was a real possibility that any delay to obtain a warrant would result in the destruction of evidence. . . . Even if Legg would not have purposely tried to destroy evidence of her blood-alcohol level, this evidence would have naturally dissipated during any delay."); *State v. Findlay*, 259 Iowa 733, 743, 145 N.W.2d 650, 656 (1966) (holding that the delay required to obtain a search warrant would result in the destruction of evidence of an alcohol-related offense).

The State here bases its argument for admission of the blood-test evidence on the exigency rationale of *Schmerber* and Iowa Code section 321J.10A(1). The exigency, of course, is the natural tendency of alcohol

---

[1]The destruction of evidence in alcohol-related offenses is unique. This court has recognized two ways by which evidence of alcohol-related offenses can be destroyed. "First, a suspect could ingest more alcohol, skewing the alcohol content higher and corrupting any evidence of prior consumption. Second, the blood alcohol level naturally dissipates during a delay." *State v. Lovig*, 675 N.W.2d 557, 566 (Iowa 2004) (citation omitted) (footnote omitted). It is the latter that is of concern in the present case. Alcohol is absorbed into the blood shortly after it is ingested. E. John Wherry, Jr., *Vampire or Dinosaur: A Time to Revisit* Schmerber v. California*?*, 19 Am. J. Trial Advoc. 503, 515 (1996). Once all of the alcohol has been absorbed from the stomach and the small intestine into the bloodstream, the level of alcohol in the blood is at a maximum. *Id.* Thereafter, the alcohol concentration in the blood slowly decreases as the alcohol dissipates from the human body. *Id.* In general, alcohol dissipates from an average person's body at a rate of .015% to .020% per hour. *Id.* at 516. The alcohol will continue to dissipate until it is completely eliminated from the body. *Id.* at 515.

to dissipate from a person's system. Johnson, on the other hand, contends the warrantless withdrawal of his blood did not comport with section 321J.10A and was unreasonable for Fourth Amendment purposes for two reasons: (1) the officer could have reduced the exigency by applying for a warrant by telephone under Iowa Code section 321J.10, and (2) there was no real exigency because a later sample could be used to determine the alcohol concentration at an earlier time through the process of extrapolation.

The impact of *Schmerber* and statutes such as our Iowa Code section 321J.10A(1), allowing extraction of blood without a warrant, have been discussed by cases from other jurisdictions with mixed conclusions. The Wisconsin Supreme Court has observed that

> *Schmerber* can be read in either of two ways: (a) that the rapid dissipation of alcohol in the bloodstream *alone* constitutes a sufficient exigency for a warrantless blood draw to obtain evidence of intoxication following a lawful arrest for a drunk driving related violation or crime—as opposed to taking a blood sample for other reasons, such as to determine blood type; or (b) that the rapid dissipation of alcohol in the bloodstream, coupled with an accident, hospitalization, and the lapse of two hours until arrest, constitute exigent circumstances for such a blood draw.

*State v. Bohling*, 494 N.W.2d 399, 402 (Wis. 1993) (emphasis added). A majority of the Wisconsin court adopted the first rationale—that the rapid dissipation of alcohol alone constitutes a sufficient exigency to withdraw blood without a warrant. *Id.* The court discussed several cases and other authorities, which, it observed, had a similar view. *Id.* at 403–05.

According to the dissent in *Bohling*, the majority "makes seizure of a blood sample without a warrant reasonable *per se* under the Fourth Amendment." 494 N.W.2d at 406 (Abrahamson, J., dissenting). Other

courts have rejected *Bohling*'s application of *Schmerber*. The Utah Supreme Court, for example, stated that:

> Contrary to the assertion of the State, *Schmerber* does not stand for the proposition that the loss of evidence of a person's blood-alcohol level through the dissipation of alcohol from the body was a sufficient exigency to justify a warrantless blood draw. Rather, these three categories of "special facts" combined to create the exigency. The evanescence of blood-alcohol was never special enough to create an exigent circumstance by itself.

*State v. Rodriguez*, 156 P.3d 771, 776 (Utah 2007). We agree with this interpretation of *Schmerber*. In fact, the Court in *Schmerber* seemed to reject the notion of per se exigency in such cases. It said:

> We . . . conclude that the present record shows no violation of petitioner's right under the Fourth and Fourteenth Amendments to be free of unreasonable searches and seizures. *It bears repeating, however, that we reach this judgment only on the facts of the present record.* The integrity of an individual's person is a cherished value of our society. That we today hold that the Constitution does not forbid the States minor intrusions into an individual's body under stringently limited conditions in no way indicates that it permits more substantial intrusions, or intrusions under other conditions.

*Schmerber*, 384 U.S. at 772, 86 S. Ct. at 1836, 16 L. Ed. 2d at 920 (emphasis added). The "present record" referred to in *Schmerber* showed that time had to be taken by the arresting officer to investigate the scene of the accident, to attend to injuries, and process the defendant. *Id.* at 770–71, 86 S. Ct. at 1835–36, 16 L. Ed. 2d at 919–20. So, there was more underlying the seizure of blood in *Schmerber* than the mere phenomenon of alcohol dissipation.

Time-based considerations similar to those in *Schmerber* are present in Johnson's case. The accident occurred at approximately 4:41 p.m. Johnson left the scene. Police officers arrived, dealt with the victim's injuries, interviewed witnesses, and went looking for Johnson.

They found Johnson several blocks away. A traffic officer specializing in OWI enforcement and fatality investigations was called. Johnson attempted, but failed, field sobriety tests. He was then transported to the traffic office to obtain a breath sample (which he refused), and he was ultimately transported to the hospital. There, at 7:20 p.m., his blood was drawn.

In all, more than two and a half hours passed between the time of the accident and the time Johnson's blood was drawn. During this time, his blood-alcohol concentration was continually diminishing due to the natural dissipation of alcohol. The traffic officer testified that he believed evidence of Johnson's blood-alcohol concentration would be destroyed if he waited to draw blood until after a search warrant was obtained. We conclude that the officers complied with section 321J.10A, which requires only a reasonable belief that the delay necessary to obtain a warrant would threaten the destruction of the evidence.

**B. The Telephone Warrant Argument.** Johnson argues that Iowa Code section 321J.10, which allows an officer to obtain a telephonic search warrant, would have speeded up the warrant process and thereby reduced the effect of dissipation of alcohol from his blood. That section provides:

> Notwithstanding section 808.3 [requiring written applications], the issuance of a search warrant under this section may be based upon sworn oral testimony communicated by telephone if the magistrate who is asked to issue the warrant is satisfied that the circumstances make it reasonable to dispense with a written affidavit. The following shall then apply[.]

Iowa Code § 321J.10(3). While a telephone warrant might be obtained more quickly than a traditional warrant, we do not think it would have significantly reduced the exigency in this case. Obtaining a warrant by

telephone is fairly complicated; an officer cannot simply call up a magistrate and make a general request for a warrant. The officer must prepare a "duplicate" warrant and read the duplicate warrant, verbatim, to the magistrate. The magistrate then must enter, verbatim, what has been read to him on a form to be considered as the original warrant. Iowa Code § 321J.10(3)(*b*). The oral application must set forth facts and information tending to establish the grounds for the issuance of the warrant and describe with reasonable specificity the person or persons whose driving has been involved and from whom the specimen is to be withdrawn. *Id.* § 321J.10(3)(*c*). Gathering of this information, of course, requires considerable time. If a voice recording device is available to the magistrate, the magistrate may record the call, but otherwise "shall cause a stenographic or longhand memorandum to be made of the oral testimony of the person applying for the warrant." *Id.* § 321J.10(3)(*d*). If the magistrate is satisfied that the grounds for the issuance of the warrant have been established, the magistrate shall order the issuance of the warrant by directing the officer applying for it to sign the magistrate's name to the "duplicate" warrant. *Id.* § 321J.10(3)(*e*).

Despite the availability of a telephone warrant, we believe the facts of this case still show the exigency required by *Schmerber* and section 321J.10A. Considerable time had elapsed following the accident before the need for any warrant—traditional or telephonic—became apparent. Perhaps more importantly, we believe that Iowa Code section 321J.10A eliminates the requirement for any warrant, telephonic or traditional, if the specified conditions are met.

The Fourth Circuit addressed the effect of telephone warrants under a federal rule almost identical to Iowa Code section 321J.10. The court stated:

> [The defendants] argue that the police should have gotten a warrant via the telephone as allowed by Fed. R. Crim. P. 41(c)(2). Because of this procedure, they assert that no exigency existed. At first blush, this argument is convincing. However, analysis of the intricate requirements of Rule 41(c)(2) shows that the existence of the rule does not alter the exigency of the situation.
>
> Rule 41(c)(2)(B) requires that the police prepare a document known as "a duplicate original warrant" *before* calling the magistrate judge. Rule 41(c)(2)(B) also requires that the police must read the document verbatim to the magistrate judge. The magistrate judge must enter verbatim what is read to him onto a document known as the original warrant. Rule 41(c)(2)(D) requires the magistrate judge to place under oath the police officer requesting the warrant and anyone whose testimony forms a basis of the application. Further, Rule 41(c)(2)(D) requires the magistrate judge to record the conversation if a voice recording device is available; otherwise, the magistrate judge must arrange for a stenographic or longhand verbatim record to be made. Obviously, compliance with these rules takes time. Time is what is lacking in these circumstances [due to the natural dissipation of alcohol.]

*United States v. Reid*, 929 F.2d 990, 993 (4th Cir. 1991). The court concluded that the availability of a warrant by telephone did not vitiate the exigency upon which the seizure of the sample was justified. We agree in this case.

**C. The Extrapolation Argument.** Johnson argues that any exigency underlying the need for a prompt blood test is diminished by the fact that his blood-alcohol level at the time of the offense could be determined by extrapolation—analyzing a later specimen by applying standardized criteria to determine blood alcohol at an earlier time. It is clear, however, that this is far from an exact science. The defendant's own expert testified that the accuracy of this method is subject to variables such as the type of drink consumed and the contents of the person's stomach. The State's expert was even more guarded in his assessment of this process, testifying that extrapolation is "just an approximation. It's just an estimation."

The court in *People v. Thompson*, 135 P.3d 3 (Cal. 2006), stated:

> We are . . . unpersuaded by defendant's claim that any exigency is eliminated because of the possibility an expert could testify about the defendant's blood-alcohol level at an earlier point "by extrapolating backward from the later-taken results." As courts have recognized, "such extrapolations can be speculative."

*Thompson*, 135 P.3d at 12 (quoting *Bohling*, 494 N.W.2d at 405). The court in *Thompson* identified some of the factors that may affect the extrapolated result, including weight of the person, the timing and content of the last meal, and physical exertion. *Id.*

We conclude that the possibility of an extrapolated blood-alcohol percentage did not remove the exigency in this case. Section 321J.10A(1) contemplates accurate blood-test results obtained from samples that are reasonably contemporaneous with the event in question—not obtaining blood-alcohol results through the process of extrapolation, which is concededly less accurate.

We find no error in the trial court's conclusions and therefore affirm.

**AFFIRMED.**

All justices concur except Ternus, C.J., who takes no part.