STATE of Wisconsin, Plaintiff-Respondent,

v.

Robert W. WODENJAK, Defendant-Appellant.†

Court of Appeals

*No. 00–3419–CR. Submitted on briefs June 26, 2001.—Decided August 1, 2001.*

2001 WI App 216

(Also reported in 634 N.W.2d 867.)

† Petition to review denied 10-23-01.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Rex R. Anderegg* of *Anderegg & Mutschler, LLP* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Robert Sager*, assistant district attorney.

Before Nettesheim, P.J., Brown and Snyder, JJ.

¶ 1. NETTESHEIM, P.J. Robert W. Wodenjak appeals from a judgment of conviction for operating a motor vehicle while intoxicated (OWI) pursuant to Wis. Stat. § 346.63(1)(a) (1999–2000).[1] Wodenjak was convicted as a fourth-time repeat offender pursuant to § 346.65(2)(d). Wodenjak challenges the trial court's denial of his motion to suppress the results of a blood test. Wodenjak argues that there was no exigency under the Fourth Amendment permitting the police to perform a blood test because he had previously offered to submit to a breath test. We reject Wodenjak's argument and affirm the judgment of conviction.

### FACTS

¶ 2. The underlying facts are not in dispute. Wisconsin State Trooper Timothy Berg arrested Wodenjak for OWI on March 7, 1999, in Winnebago county. Berg had access to a functioning Intoxilyzer machine at the time of the arrest. However, state patrol policy provided that the primary test for repeat OWI offenders was a

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version.

blood test.[2] Therefore, Berg transported Wodenjak to a local hospital for a blood test. At the hospital, Berg advised Wodenjak under the Implied Consent Law, WIS. STAT. § 343.305(4), and asked Wodenjak if he would submit to a blood test. In response, Wodenjak asked if he could take a breath test.[3] Berg rejected this request, stating that the blood test was the primary test for repeat offenders. Wodenjak then refused the blood test and Berg noted the refusal on the implied consent form.

¶ 3. Berg then advised Wodenjak that, despite the refusal, state patrol policy required a blood sample from a repeat offender with or without the offender's consent. Wodenjak then changed his mind and submitted to the blood test.[4]

¶ 4. The State filed a criminal complaint charging Wodenjak with OWI as a repeat offender.[5] Wodenjak

[2] Berg apparently had information that Wodenjak was a repeat offender and he was charged as such in the criminal complaint.

[3] Berg testified that he did not recall Wodenjak making this inquiry, but acknowledged that he might have. Wodenjak testified that he did make the inquiry, and we accept that fact for purposes of this appeal. In addition, we note that the record is unclear as to whether Wodenjak made this inquiry before or during the implied consent colloquy. However, this uncertainty is not critical because, under either scenario, Wodenjak's inquiry came before he submitted to the blood test.

[4] Based upon Wodenjak's change of mind, Berg struck the notation on the implied consent form that Wodenjak had refused the test. We glean from this that the State did not charge Wodenjak with unlawfully refusing to submit to a chemical test under the Implied Consent Law.

[5] The complaint also charged Wodenjak with operating a motor vehicle with a prohibited blood alcohol concentration (PAC) pursuant to WIS. STAT. § 343.63(1)(b). The transcript of the plea and sentencing proceeding does not reveal that the

followed with a motion to dismiss arguing that the blood test procedure was unreasonable under the Fourth Amendment because he had volunteered to submit to the less invasive breath test procedure. The trial court denied the motion. Thereafter Wodenjak entered a no contest plea to the OWI charge, and he appeals from the ensuing judgment of conviction.

## *DISCUSSION*

██

¶ 5. On appeal, Wodenjak renews his trial court argument that the taking of his blood was unreasonable under the Fourth Amendment because he was willing to submit to the less invasive breath test procedure.[6] The question of whether the reasonableness standard of the Fourth Amendment is satisfied presents a question of constitutional law that we review de novo. *State v. Thorstad,* 2000 WI App 199, ¶ 4, 238 Wis. 2d 666, 618 N.W.2d 240, *review denied,* 239 Wis. 2d 310, 619 N.W.2d 93, 2000 WI 121 (Wis. Oct. 17, 2000) (No. 99–1765–CR), *cert. denied, Thorstad v. Wisconsin,* 121 S. Ct. 1099 (U.S. Wis. Feb. 20, 2001) (No. 00–1145).

¶ 6. Two Wisconsin cases are relevant to the appellate issue. The first, and most important, is *State v.*

---

State moved to dismiss this charge. And the judgment of conviction refers only to an OWI conviction pursuant to § 346.63(1)(a). Upon remittitur of the record in this case, we direct the parties and the court to address the status of the PAC charge because, based upon the appellate record, that charge appears to still be pending against Wodenjak.

[6] WISCONSIN STAT. § 343.305(3)(c) states that the Implied Consent Law "does not limit the right of a law enforcement officer to obtain evidence by any other lawful means." Therefore, we agree with Wodenjak that the law of search and seizure, not the law of implied consent, controls this case.

*Bohling*, 173 Wis. 2d 529, 494 N.W.2d 399 (1993). There, the police informed Bohling under the Implied Consent Law and asked him to submit to a breath test. *Id.* at 534. Bohling refused. *Id.* The police then informed Bohling that, despite his refusal, they would seek a blood sample and that force, if necessary, would be used. *Id.* at 534–35. As a result, Bohling submitted to the blood test. *Id.* at 535. By motion to suppress, Bohling challenged the blood test on Fourth Amendment grounds. *Id.* at 533. Bohling contended that the test was unreasonable because there were no exigent circumstances justifying the warrantless draw of his blood. *Id.*

¶ 7. The supreme court rejected Bohling's argument. *Id.* at 533–34. The court's opinion was based largely on *Schmerber v. California*, 384 U.S. 757 (1966), where the United States Supreme Court held that a warrantless blood draw did not violate the reasonableness requirement of the Fourth Amendment under certain conditions.[7] *Bohling*, 173 Wis. 2d at 537. The *Bohling* court held:

> The dissipation of alcohol from a person's blood stream constitutes a sufficient exigency to justify a warrantless blood draw. Consequently, a warrantless blood sample taken at the direction of a law enforcement officer is permissible under the following circumstances: (1) the blood draw is taken to obtain evidence of intoxication from a person lawfully arrested for a drunk-driving related violation or crime, (2) there is a clear indication

---

[7] Those conditions are: (1) the police have a clear indication that the evidence they seek will be found in the suspect's blood; (2) exigent circumstances exist; and (3) the method used to take the blood sample is reasonable and is performed in a reasonable manner. *State v. Bohling*, 173 Wis. 2d 529, 537, 494 N.W.2d 399 (1993).

that the blood draw will produce evidence of intoxication, (3) the method used to take the blood sample is a reasonable one and performed in a reasonable manner, and (4) the arrestee presents no reasonable objection to the blood draw.

*Id*. at 533–34 (footnote omitted).

¶ 8. The second case is *Thorstad*. There, the police informed Thorstad under the Implied Consent Law and asked him to submit to a blood test. Thorstad agreed. He later filed a motion to suppress, contending that the blood test procedure was unreasonable under the Fourth Amendment because it was involuntary and nonconsensual.

¶ 9. Relying on *Bohling*, the court of appeals rejected Thorstad's constitutional challenge to the blood test procedure. The *Thorstad* court said:

> However, *Bohling* does not require that the subject of the blood test give consent or voluntarily take the test nor does *Bohling* thus depend on whether the subject of the blood test was deemed to have consented under WIS. STAT. § 343.305. Therefore, Thorstad's contention that his blood test was an unreasonable search must ultimately rest on one of the following premises: (1) the requirements of *Bohling* were not met; (2) § 343.305 is unconstitutional; or, (3) *Bohling* is unconstitutional.

*Thorstad*, 2000 WI App 199 at ¶ 10 (citation omitted; footnote omitted). Noting that it was bound by the holding of *Bohling*, the court concluded that the blood test procedure was constitutionally permissible because the *Bohling* factors were satisfied. *Thorstad*, 2000 WI App 199 at ¶¶ 11, 17.

¶ 10. In summary, the teaching of *Bohling* and *Thorstad* is that a forcible warrantless blood draw does

not violate the Fourth Amendment if the conditions specified in *Bohling* are satisfied. And it makes no difference whether the suspect refuses the primary breath test and then submits to the blood test (*Bohling*) or the suspect submits to the primary blood test (*Thorstad*).

¶ 11. Wodenjak correctly observes that unlike *Bohling* and *Thorstad*, here he asked for the alternate breath test before he submitted to the primary blood test. Based on those facts, Wodenjak argues there was no exigency justifying a blood test because the less invasive breath test procedure was available to the police and because a breath test result has the same evidentiary value as a blood test result. This argument targets the third and fourth factors under *Bohling*. Wodenjak contends that his willingness to take the available breath test rendered the "method used to take the blood" unreasonable under the third factor of *Bohling* and also constituted a "reasonable objection" on his part under the fourth factor of *Bohling. See Bohling*, 173 Wis. 2d at 534.

¶ 12. We appreciate the factual distinctions between this case on the one hand and *Bohling* and *Thorstad* on the other. But we nonetheless conclude that the holdings of those cases govern here. *Bohling* recognizes that the dissipation of alcohol from a person's blood constitutes an exigent circumstance justifying a warrantless blood draw subject to certain conditions. *Bohling*, 173 Wis. 2d at 533. *Thorstad* states that both *Bohling* and *Schmerber* hold that a blood test performed in a medical setting satisfies both the "reasonable method" and "reasonable manner" requirements of the law. *Thorstad*, 2000 WI App 199 at ¶ 15. Wodenjak does not cite to any law, and we otherwise know of none, which holds that the availability of less

invasive alternate tests changes the holding of these cases or that the police must consider such alternate tests when deciding whether to obtain a blood draw from a suspect.

■

¶ 13. In summary, both the United States Supreme Court and the Wisconsin Supreme Court have put their constitutional stamp of approval on the warrantless taking of a blood draw subject to certain conditions and controls. Those conditions and controls do not require the police to consider alternate tests. Therefore, Wodenjak's request for the less invasive breath test and the availability of such a test did not deprive Berg of his authority to obtain a blood sample from Wodenjak under *Bohling*.[8]

---

[8] Wodenjak also relies on *Nelson v. City of Irvine*, 143 F.3d 1196 (9th Cir. 1998). There, in a class action suit alleging 42 U.S.C. § 1983 violations, the plaintiffs alleged that they had been coerced into submitting to blood tests and deprived of the statutory option to take a breath or urine test. *Nelson*, 143 F.3d at 1199. Reversing a judgment on the pleadings, the Ninth Circuit held that the exigent circumstances justifying a blood test were not present when an arrestee consents to a breath or urine test, and such tests are available. *Id.* at 1207.

We reject Wodenjak's reliance on *Nelson* for two reasons. First, as *Thorstad* has stated, "To the extent, if any, that *Nelson* is in conflict with the exigent circumstances analysis of *Bohling* and *Schmerber [v. California*, 384 U.S. 757 (1966)], it is not for this court to resolve that conflict." *State v. Thorstad*, 2000 WI App 199, ¶ 9, 238 Wis. 2d 666, 673, 618 N.W.2d 240, *review denied*, 239 Wis. 2d 310, 619 N.W.2d 93, 2000 WI 121 (Wis. Oct. 17, 2000) (No. 99–1765–CR), *cert. denied, Thorstad v. Wisconsin*, 121 S. Ct. 1099 (U.S. Wis. Feb. 20, 2001) (No. 00–1145). Second, and more importantly, *Nelson* interpreted California's implied consent law which gives the suspect the *option* of

¶ 14. We uphold the trial court's ruling denying Wodenjak's motion to suppress.

*By the Court.*—Judgment affirmed.

choosing which test to take. *Nelson*, 143 F.3d at 1201. (Further, California law requires that breath and urine tests be available: a DUI arrestee "has the choice of whether the test shall be of his or her blood, breath, or urine, and the officer shall advise the person that he or she has that choice.") In contrast, the Wisconsin implied consent law accords no such option to the arrestee. Instead, the implied consent law authorizes the police to designate the primary test. WIS. STAT. § 343.305(2).