STATE of Wisconsin, Plaintiff-Respondent,

v.

Donald D. MARSHALL, Defendant-Appellant.†

Court of Appeals

*No. 01–1403–CR. Oral argument January 9, 2002.—Decided February 5, 2002.*

2002 WI App 73

(Also reported in 642 N.W.2d 571.)

† Petition to review filed.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Richard L. Zaffiro* of Wauwatosa, with oral argument by *Richard L. Zaffiro*.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Kathleen M. Ptacek*, assistant attorney general, and *James E. Doyle*, attorney general, with oral argument by *Kathleen M. Ptacek*.

Before Fine, Schudson and Curley, JJ.

¶ 1. CURLEY, J. Donald D. Marshall appeals from a judgment entered after he pled guilty to one

count of operating a motor vehicle while intoxicated (OWI) (fifth offense), contrary to WIS. STAT. § 346.63(1)(a) (1999–2000).[1] Marshall also appeals from the trial court's order denying his postconviction motion. Marshall claims that: (1) his trial counsel was ineffective for failing to move to suppress the blood alcohol evidence, which he alleges was obtained in violation of WIS. STAT. § 343.305(9)(a); and (2) two "new factors" establish grounds for modification of his sentence. We disagree and affirm.

## I. BACKGROUND.

¶ 2. On February 18, 2000, City of Cudahy Police Officer Mark Bozeil responded to a complaint of a "potential drunk driver" operating a four-door Honda vehicle. Officer Bozeil located the Honda and immediately followed the vehicle. After approximately two blocks, the driver stopped at a stop sign. After stopping for an unusually long period of time, the driver of the Honda started to pull into the intersection but quickly stopped when his vehicle was almost struck by a westbound vehicle which did not have a stop sign. The officer activated his emergency lights and the driver of the Honda, Marshall, pulled to the curb.

¶ 3. Upon approaching Marshall's vehicle and leaning his head down to the open car window, the officer detected a strong odor of alcohol. He also observed that Marshall's speech was slurred and his eyes were red and glassy. Marshall soon admitted that he had consumed about "three beers or so." The officer attempted to have Marshall perform field sobriety tests,

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

but Marshall was unable to stand without assistance. After failing a preliminary breathalyzer, Marshall was placed under arrest.

¶ 4.   Marshall was then transported to St. Luke's Hospital where he was read the "Informing the Accused" form. Marshall refused to submit to a voluntary blood draw, stating that the police would have to "restrain him." Marshall stated in an affidavit that subsequent to his refusal, that a captain or lieutenant of the Cudahy Police Department came into the room where he was seated, showed him a big bag of colored straps, and told him that he was either going to submit to the blood draw or he and other police officers were going to physically strap him down and take his blood regardless of his wishes. Marshall then consented to the blood draw and to an intoximeter test of his breath. These tests revealed a blood alcohol content of .224% by weight of alcohol in Marshall's blood, and .17 grams of alcohol in 210 liters of Marshall's breath, both well above the legal limit. On April 24, 2000, Marshall, without filing any motions to suppress the evidence, entered a guilty plea to operating a motor vehicle while intoxicated (fifth offense).

## II. ANALYSIS.

*A. Marshall's trial counsel was not ineffective.*

■■■■

¶ 5.   The familiar two-pronged test for ineffective assistance of counsel claims requires defendants to prove:   (1) deficient performance, and (2) prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Bentley*, 201 Wis. 2d 303, 311–12, 548 N.W.2d 50 (1996). To prove deficient performance, a defendant must show specific acts or omissions of counsel that

were "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. To prove prejudice, a defendant must show that counsel's errors were so serious that the defendant was deprived of a fair trial and a reliable outcome. *See id.* at 687. In other words, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

¶ 6. Ineffective assistance of counsel claims present mixed questions of fact and law. *State v. Pitsch*, 124 Wis. 2d 628, 633–34, 369 N.W.2d 711 (1985). A trial court's factual findings must be upheld unless they are clearly erroneous. *State v. Harvey*, 139 Wis. 2d 353, 376, 407 N.W.2d 235 (1987). Whether counsel's performance was deficient and, if so, whether the deficient performance prejudiced the defendant are questions of law, which we review *de novo. Pitsch*, 124 Wis. 2d at 634. The defendant has the burden of persuasion on both prongs of the test. *See Strickland*, 466 U.S. at 687.

¶ 7. Marshall asserts that WIS. STAT. § 343.305(9)(a) provides the exclusive option for law enforcement when faced with an arrestee who refuses to submit samples of his or her breath, blood or urine for testing. Thus, Marshall argues that his trial counsel was ineffective for failing to move to suppress the blood alcohol evidence, which he alleges was taken in violation of WIS. STAT. § 343.305(9)(a), because law enforcement has no right, under the implied consent law, either to forcibly withdraw blood without an arrestee's consent or to obtain an arrestee's consent by threatening to forcibly withdraw blood.

¶ 8. WISCONSIN STAT. § 343.305(9)(a) states, in relevant part: "If a person refuses to take a test under

sub. (3) (a), the law enforcement officer shall immediately take possession of the person's license and prepare a notice of intent to revoke, by court order under sub. (10), the person's operating privilege." In concluding that this is an arresting officer's only recourse upon an arrestee's refusal to submit to chemical testing, Marshall relies on language from *County of Ozaukee v. Quelle*, 198 Wis. 2d 269, 542 N.W.2d 196 (Ct. App. 1995), in which this court stated:

> Every driver in Wisconsin impliedly consents to take a chemical test for blood alcohol content. A person may revoke consent, however, by simply refusing to take the test. Thus, a driver has a "right" not to take the chemical test (although there are certain risks and consequences inherent in this choice). The legislature recognized that drivers being asked to take a chemical test should be informed of this choice and therefore requires law enforcement officers to provide drivers with certain information.

*Id.* at 277–78 (citations omitted).

¶ 9. While Marshall correctly concludes that WIS. STAT. § 343.305 does not authorize a forcible withdrawal of blood, *see State v. Krause*, 168 Wis. 2d 578, 585–86, 484 N.W.2d 347 (Ct. App. 1992), he incorrectly assumes that the implied consent law provides the exclusive alternative for law enforcement when faced with a suspect who refuses chemical testing. As noted in *Krause*:

> [I]n sec. 7, ch. 193, Laws of 1977, the legislature repealed and recreated the implied consent law, eliminating the language in sec. 343.305(2)(b), Stats. (1975–76), which stated, "If the person refuses the request of a traffic officer to submit to a chemical test, no test shall be given . . . ." By this statutory change, the legislature removed from Wisconsin drivers abso-

lute control of whether a chemical test will be administered. Whether or not such evidence can be obtained should not depend on the arrestee's cooperation with law enforcement officers. To adopt that reasoning would result in a "premium given to the more obstreperous drunk driver who is more successful in forcibly resisting the withdrawal of a blood sample."

*Id.* at 586 n.3.

¶ 10.    Marshall's specific challenge to the implied consent statute has been addressed and rejected in *State v. Gibson*, 2001 WI App 71, 242 Wis. 2d 267, 626 N.W.2d 73. In *Gibson*, the court was presented with the same issue raised by Marshall, i.e., "whether the implied consent law provides the exclusive remedy upon a refusal to submit to evidentiary testing so that law enforcement cannot obtain evidence by other legal means." *Id.* at ¶ 6. Like Marshall, Gibson was arrested for OWI and initially refused to take the requested blood test. *Id.* at ¶ 3. After the arresting police officer indicated that there was no other way Gibson was going to be able to get out of the situation and after informing him that the penalties would be increased if he refused the test, Gibson submitted to the blood test, which showed a .248 blood alcohol concentration. *Id.* In upholding the trial court's admission of the results of the blood test into evidence, this court stated, "the implied consent statute does not restrict the police from using other constitutional means to collect evidence of the driver's intoxication." *Id.* at ¶ 12.

¶ 11.    Further, in *Gibson*, this court clarified that *Quelle* does not support the conclusion that Wis. Stat. § 343.305(9)(a) is the only remedy upon refusal:

[R]eliance on *Quelle* is misplaced for two reasons. First, *Quelle* did not address the issue at hand; it was a "subjective confusion" case. The court therefore did not

418

have an opportunity to evaluate its observation in light of the arguments Gibson raises. It did not consider whether a suspect's refusal must be honored in all instances. Thus, when placed in proper context, it appears that the *Quelle* court merely concluded that an OWI suspect has the right not to *voluntarily* take a test, by "revoking" consent. This construction comports with the cases that consistently hold that, under appropriate circumstances, a suspect's blood may be withdrawn regardless of consent.

Second, and most important, under Gibson's interpretation[,] this passage from *Quelle* directly contradicts our supreme court's repeated holding that a driver in this state has no right to refuse to take a chemical test. The consent is implied as a condition of the privilege of operating a motor vehicle upon state highways. By implying consent, the statute removes the right of a driver to lawfully refuse a chemical test . . . . Thus, the language in *Quelle* notwithstanding, [a suspect] does not have a right to refuse to submit to evidentiary testing.

While at first blush it may arguably appear that the implied consent statute supplies the exclusive remedy for its violation, it does not follow that it precludes law enforcement from pursuing other constitutional avenues for collecting evidence of a traffic violation.

*Gibson*, 2001 WI App 71 at ¶¶ 8–10 (emphasis added) (citations omitted).

¶ 12. Thus, because a forcible warrantless blood draw does not violate the Fourth Amendment if the conditions specified in *Bohling*[2] are satisfied, *see State v.*

---

[2] "[A] warrantless blood sample taken at the direction of a law enforcement officer is permissible under the following circumstances: (1) the blood draw is taken to obtain evidence of

*Wodenjak*, 2001 WI App 216, ¶ 10, 247 Wis. 2d 554, 634 N.W.2d 867, applying the rationale of *Gibson*, we are satisfied that even if an arrestee refuses to submit to a voluntary blood test, an officer may acknowledge the refusal, complete the "Notice of Intent to Revoke Operating Privilege" form as provided by Wis. Stat. § 343.305(9)(a), and then proceed with an involuntary blood test as the basis for the operating a motor vehicle with a prohibited blood alcohol concentration (PAC) charge and in support of the operating a motor vehicle while intoxicated charge.

■

¶ 13. However, the following question naturally arises: What is the significance of having the right to refuse voluntary chemical testing, when law enforcement may force testing regardless of consent? *See Quelle*, 198 Wis. 2d at 277–78; *see also State v. Piddington*, 2001 WI 24, ¶ 18, 241 Wis. 2d 754, 623 N.W.2d 528 (dealing with the manner in which law enforcement informs apprehended drivers about their rights and responsibilities under the implied consent law). The answer is that a driver who refuses to submit to chemical testing faces certain risks and consequences that are entirely independent from the OWI/PAC offense. As illustrated in *State v. Zielke*, 137 Wis. 2d 39, 403 N.W.2d 427 (1987):

intoxication from a person lawfully arrested for a drunk-driving related violation or crime, (2) there is a clear indication that the blood draw will produce evidence of intoxication, (3) the method used to take the blood sample is a reasonable one and performed in a reasonable manner, and (4) the arrestee presents no reasonable objection to the blood draw." *State v. Wodenjak*, 2001 WI App 216, ¶ 7, 247 Wis. 2d 554, 634 N.W.2d 867 (citing *State v. Bohling*, 173 Wis. 2d 529, 533–34, 494 N.W.2d 399 (1993)).

[T]wo separate substantive offenses are potentially operative in all prosecutions involving intoxicated use of a vehicle. The first . . . is refusing to submit to a chemical test under sec. 343.305(2), Stats. If a driver refuses to take a test he or she faces automatic license revocation. The second substantive offense may involve operating while intoxicated (OWI), sec. 346.63[(1)(a), operating with a prohibited alcohol concentration, sec. 346.63(1)(b),] homicide by intoxicated use of a vehicle, sec. 940.09, or injury by intoxicated use of a vehicle, sec. 940.25 . . . .

The refusal procedures . . . are separate and distinct from prosecution for the offense involving intoxicated use of a vehicle.

. . . .

This . . . demonstrates the separateness of the civil refusal proceeding set forth in sec. 343.305 and the underlying criminal offenses involving operating a motor vehicle while intoxicated set forth in secs. 346.63, 940.09 and 940.25.

*Id.* at 47–49. Therefore, *Gibson* and *Zielke* stand for the proposition that while the implied consent statute provides an incentive for voluntary chemical testing, i.e., not facing civil refusal procedures and automatic revocation, voluntary testing is not the exclusive means that blood, urine or breath samples may be constitutionally obtained.

¶ 14.   Additionally, the supreme court's concern in *Piddington* over the comprehensibility of the implied consent warnings is not rendered irrelevant by this conclusion. Rather, "[t]he opportunity to introduce the fact of refusal presupposes that a defendant has been advised of his or her rights as required by sec. 343.305(3)(a), Stats." *Zielke*, 137 Wis. 2d at 50. Thus, reasonable convey- ance of the implied consent warn-

ings is a prerequisite to revocation based on refusal or use of the fact of refusal in the subsequent prosecution for OWI or PAC. *See id.*

¶ 15.　Marshall claims that because the police explicitly threatened to physically strap him down, his situation is significantly distinguishable for Fourth Amendment purposes from the situation in *Gibson*, where the arresting officer only implicitly threatened the use of force. We disagree. Because law enforcement personnel may use reasonable force to withdraw blood from a noncompliant suspect, *see Wodenjak*, 2001 WI App 216 at ¶ 7, they may necessarily inform a suspect that such a procedure is a possibility upon his or her refusal.

¶ 16.　Therefore, Marshall's contention must ultimately rest on one of the following:　(1) *Gibson* is unconstitutional; or (2) the *Bohling* requirements were not met. First, because we "may not overrule, modify or withdraw language from a previously published decision of the court of appeals," *see Cook v. Cook*, 208 Wis. 2d 166, 190, 560 N.W.2d 246 (1997), we cannot alter the constitutional standard established in *Gibson*. *See State v. Thorstad*, 2000 WI App 199, ¶ 11, 238 Wis. 2d 666, 618 N.W.2d 240. While adhering to *Gibson*, we also take this opportunity to point out a possible inconsistency. *See Cook*, 208 Wis. 2d at 190 ("[T]he court of appeals may decide the appeal, adhering to a prior case but stating its belief that the prior case was wrongly decided.").

¶ 17.　In *Quelle*, this court stated, "a driver has a 'right' not to take the chemical test." *Quelle*, 198 Wis. 2d at 277. This court did not state, as concluded by the *Gibson* court, "a driver has only the 'right' not to take a

*voluntary* test." *Id.* We note that *Gibson*'s addition of the word "voluntary" may seem to minimize the importance of the "right" outlined in *Quelle*. It appears contradictory to state, on the one hand, that a driver has a right not to take a chemical test, and then, less than six years later, state that a driver must take a chemical test.

¶ 18. Thus, because "we are presented with a published decision of our court that arguably overrules, modifies or withdraws language from a prior published decision of this court, we must first attempt to harmonize the two cases." *Garfoot v. Fireman's Fund, Ins. Co.*, 228 Wis. 2d 707, 723, 599 N.W.2d 411 (Ct. App. 1994). "That is, if there is a reasonable reading of the two cases that avoids the second case overruling, modifying or withdrawing language from the first, that is the reading we must adopt." *Id.* In an attempt to harmonize *Gibson* and *Quelle*, we conclude that, based on the long line of cases holding that a suspect's blood may be drawn regardless of consent, *see, e.g., Wodenjak*, 2001 WI App 216 at ¶ 10, the *Gibson* court simply clarified, rather than modified, the right of refusal outlined in *Quelle*; *i.e.*, that a suspect's right of refusal is limited to the right to refuse to submit to a voluntary blood draw.

¶ 19. Second, because Marshall fails to assert that the *Bohling* requirements were not met, we decline to address the issue. *See State v. Pettit*, 171 Wis. 2d 627, 647, 492 N.W.2d 633 (Ct. App. 1992) (stating that the court of appeals may decline to review an issue inadequately briefed). Accordingly, because evidence of Marshall's blood alcohol concentration was properly obtained under *Gibson*, we conclude that Marshall's

423

trial counsel was not ineffective for failing to object to its admission into evidence.[3]

## B. *Marshall is not entitled to sentence modification based on "new factors."*

¶ 20.  Marshall claims that two "new factors" establish grounds for modification of his sentence:  (1) the restraining order case against him was dismissed for lack of proof, not because of criminal charges being issued as assumed by the trial court; and (2) the trial court relied on sentencing guidelines which predated the truth-in-sentencing law, even though he was sentenced under the truth-in-sentencing law. Marshall concludes that these "new factors" are significant and that his sentence would have been less severe if these errors had not occurred. We disagree.

¶ 21.  "Whether a set of facts is a 'new factor' is a question of law which we review without deference to the trial court." *State v. Michels*, 150 Wis. 2d 94, 97, 441 N.W.2d 278 (Ct. App. 1989). "Whether a new factor warrants a modification of sentence rests within the trial court's discretion." *Id.*

¶ 22.  "[T]he phrase 'new factor' refers to a fact or set of facts highly relevant to the imposition of sentence, but not known to the trial judge at the time of original sentencing, either because it was not then in

---

[3] Marshall also alleges that the trial court erred in failing to conduct an evidentiary hearing regarding his postconviction motion. However, because we have concluded that Marshall is not entitled to relief, it was within the trial court's discretion to deny Marshall's postconviction motion without a hearing. *See State v. Bentley*, 201 Wis. 2d 303, 310–13, 548 N.W.2d 50 (1996).

existence or because, even though it was then in existence, it was unknowingly overlooked by all of the parties." *Rosado v. State*, 70 Wis. 2d 280, 288, 234 N.W.2d 69 (1975). However, the case law since *Rosado* has limited the "new factor" standard to situations where the new factor frustrates the purpose of the original sentencing. *Michels*, 150 Wis. 2d at 97. Thus, "[t]here must be some connection between the factor and the sentencing – something which strikes at the very purpose for the sentence selected by the trial court." *Id.* at 99.

¶ 23.   Here, no such connection exists. With regard to the restraining order, in denying Marshall's motion for sentence modification, the trial court stated:

> The defendant also seeks sentence modification on new factor grounds. First, he contends that the presentence report erroneously indicated that his ex-girlfriend failed to obtain a permanent restraining order against him because criminal charges were issued when in fact the permanent restraining order was dismissed for failure of proof. Even so, the court did not rely upon this information in determining sentence, and therefore, a modification of the sentence is not warranted on these grounds.

Marshall provides this court with no evidence to the contrary. Therefore, because Marshall has failed to prove that the trial court relied on the inaccurate information in the presentence investigation report, we reject his first claim. *See State v. Anderson*, 222 Wis. 2d 403, 408, 588 N.W.2d 75 (Ct. App. 1998) ("A defendant who requests resentencing must show that specific information in the [presentence investigation report] was inaccurate and that the court actually relied upon the inaccurate information in sentencing.").

¶ 24. Marshall's second argument raises significant constitutional arguments that he fails to adequately develop. Thus, we decline to address his broad assertion that the trial court improperly relied on pre-truth-in-sentencing guidelines. *See Cemetery Servs., Inc. v. Department of Regulation and Licensing,* 221 Wis. 2d 817, 831, 586 N.W.2d 191 (Ct. App. 1998) ("Constitutional claims are very complicated from an analytic perspective, both to brief and to decide. A one or two paragraph statement that raises the specter of such claims is insufficient to constitute a valid appeal of these constitutional issues to this court. For us to address undeveloped constitutional claims, we would have to analyze them, develop them, and then decide them. We cannot serve as both advocate and court. For this reason, we generally choose not to decide issues that are not adequately developed by the parties in their briefs.").

¶ 25. Based upon the foregoing reasons, the judgment and order are affirmed.

*By the Court.*—Judgment and order affirmed.

¶ 26. FINE, J. *(concurring)*. I join in the Majority Opinion, and offer the following brief comments.

¶ 27. The legislature's command that a person suspected of drunk driving must take the blood-alcohol test sought by law enforcement would be hollow unless there was a mechanism to administer the test on someone who did not cooperate. Absent such a mechanism, drunk drivers could, by the mere expedient of accepting the statutory consequences of a "refusal," avoid a test that provides irrefutable proof of whether they are drunk. To permit drivers to so easily skirt the requirement that they submit to a test chosen by law

enforcement would, in my view, to use the word Judge Schudson uses in his concurrence, be an "absurd" reading of the statutes designed to rid our highways of drunk drivers. Thus, I believe that the Majority reads correctly our decision in *State v. Gibson*, 2001 WI App 71, 242 Wis. 2d 267, 626 N.W.2d 73, and appropriately applies it to this case.

¶ 28.   SCHUDSON, J. (*concurring*). We have decided this case as we must, *see Cook v. Cook*, 208 Wis. 2d 166, 190, 560 N.W.2d 246 (1997), and Judge Curley's thoughtful opinion explains why. Her analysis of *County of Ozaukee v. Quelle*, 198 Wis. 2d 269, 277, 542 N.W.2d 196 (Ct. App. 1995), and *State v. Gibson*, 2001 WI App 71, 242 Wis. 2d 267, 626 N.W.2d 73, is particularly important, *see* majority at ¶¶ 17–18, and helps to explain why the instant appeal calls out for further review.

¶ 29.   I write separately to suggest the supreme court's consideration of two propositions: (1) that, until *Gibson*, our case law established that Marshall's statutory argument was correct; and (2) that, under pre-*Gibson* principles, and as a matter of sound public policy and prudent police practice, *Gibson* (and, perforce, our decision in the instant case) should be overruled.

¶ 30.   "Application of the implied consent statute to an undisputed set of facts, like any statutory construction, is a question of law," subject to *de novo* review. *State v. Reitter*, 227 Wis. 2d 213, 223, 595 N.W.2d 646 (1999). Until *Gibson*, Wisconsin case law had not rejected the *statutory* theory Marshall presents: that under Wisconsin's implied consent law, once an arrestee refuses to submit to a blood test, police must immedi-

ately respond with the statutorily prescribed revocation procedure, and must not threaten or compel a blood test.

¶ 31. WISCONSIN STAT. § 343.305(2) (1999–2000), a portion of Wisconsin's implied consent law, provides, in part:

> Any person who . . . operates a motor vehicle upon the public highways of this state . . . is deemed to have given consent to one or more tests of his or her breath, blood or urine, for the purpose of determining the presence or quantity in his or her blood or breath, of alcohol . . . when requested to do so by a law enforcement officer.

Moreover, blood may be drawn involuntarily, and without a warrant, from a person lawfully arrested for a drunk-driving related offense. *See State v. Bohling*, 173 Wis. 2d 529, 533–34, 494 N.W.2d 399 (1993).[1]

¶ 32. The warnings provided under the implied consent law include the following:

> This law enforcement agency now wants to test one or more samples of your breath, blood or urine to determine the concentration of alcohol or drugs in your system. If any test shows more alcohol in your system

---

[1] The supreme court explained:

[A] warrantless blood sample taken at the direction of a law enforcement officer is permissible under the following circumstances: (1) the blood draw is taken to obtain evidence of intoxication from a person lawfully arrested for a drunk-driving related violation or crime, (2) there is a clear indication that the blood draw will produce evidence of intoxication, (3) the method used to take the blood sample is a reasonable one and performed in a reasonable manner, and (4) the arrestee presents no reasonable objection to the blood draw.

*State v. Bohling*, 173 Wis. 2d 529, 533–34, 494 N.W.2d 399 (1993) (footnote omitted).

than the law permits while driving, your operating privilege will be suspended. *If you refuse to take any test that this agency requests, your operating privilege will be revoked and you will be subject to other penalties. The test results or the fact that you refused testing can be used against you in court.*

Wis. Stat. § 343.305(4) (emphasis added). Further, Wis. Stat. § 343.305(9)(a) provides, in relevant part:

> *If a person refuses to take a test* under sub. (3) (a) [authorizing a law enforcement officer to "request the person to provide one or more samples of his or her breath, blood or urine"], *the law enforcement officer shall immediately take possession of the person's license and prepare a notice to revoke* . . . the person's operating privilege.

(Emphases added.)

¶ 33. Thus, in Wis. Stat. § 343.305(4) and Wis. Stat. § 343.305(9)(a), respectively, the legislature specified that if a person refuses to take a test, his or her license "will be revoked" and the officer, upon the refusal, "shall immediately" take the actions to bring about the revocation.

¶ 34. Neither of these statutes, nor any other, provides a police officer the option to ignore or delay these dictates.[2] Neither statute, nor any other, provides

---

[2] Notwithstanding its use of the term "shall," Wis. Stat. § 343.305(9)(a) is "directory, not mandatory," for the purpose of determining whether a court has personal jurisdiction over a defendant despite the failure of a law enforcement officer to immediately prepare and serve the notice to revoke, following an arrestee's refusal. *See State v. Moline,* 170 Wis. 2d 531, 542, 489 N.W.2d 667 (Ct. App. 1992). Because neither the supreme court nor this court has decided whether the statute is directory or mandatory in the context presented in the instant appeal, I

429

a police officer the option to threaten an arrestee that he or she would be strapped down and blood forcibly drawn. Our supreme court has spoken clearly: "Once there has been a proper explanation and there has been a refusal, . . . a refusal has occurred under the statute and the accused is subject to *the consequences of a mandatory suspension." Reitter*, 227 Wis. 2d at 237 n.18 (emphasis added).

¶ 35. Although, as matter of law, a driver arrested for drunk driving has "no 'right' to refuse a chemical test," *id.* at 225, the driver still may refuse to take the test as long as he or she is prepared to suffer "the consequences of a mandatory suspension." *Id.* at 237 n.18. As this court declared, "*a driver has a 'right' not to take the chemical test* (although there are certain risks and consequences inherent in this choice)." *Quelle*, 198 Wis. 2d at 277 (emphasis added).

¶ 36. Moreover, as we also declared, "the warnings provided drivers under the implied consent law are *analogous* to those employed in *Miranda*-type cases." *Id.* at 276 (emphasis added) (footnote omitted). And, to appreciate the significance of that declaration, we must understand why the warnings are "analogous," not equivalent, and how their analogous function precludes a post-refusal forcible blood test.

¶ 37. "Officers who administer a test under the implied consent statute are not required to advise defendants about *Miranda* rights . . . (*Miranda* rules do not apply because request to submit to a chemical test does not implicate testimonial evidence)." *Reitter*, 227 Wis. 2d at 225 (citation omitted). Further, the implied consent law confers statutory rights, not constitutional

refer to the statute's "dictates," rather than to what might be termed its "directives" or "mandates."

ones, *see Quelle*, 198 Wis. 2d at 276 n.1. Not surprisingly therefore, our supreme court "has been reluctant 'to devise a "*Miranda*-like" card' under the implied consent statute." *Id.* at 230 (citation omitted).

¶ 38.   Thus, while implied consent warnings are not constitutionally *equivalent* to *Miranda* warnings, they are "*analogous*," *see Quelle*, 198 Wis. 2d at 276 (emphasis added), for the purpose of governing the law enforcement response to an arrestee's refusal. When a person, upon receiving the *Miranda* warnings, invokes the right to remain silent or the right to have counsel present, all questioning must cease, and any police effort to persuade or compel the arrestee to relinquish the invoked right is improper. *See Miranda v. Arizona*, 384 U.S. 436 (1966). *Analogously,* when an arrestee refuses a test under the implied consent law, police efforts to compel an arrestee to submit must cease, and the officer must comply with the statutory dictates.

¶ 39.   The State argues that *Bohling* requires affirmance of the trial court's denial of Marshall's suppression motion. A cursory review of *Bohling* would seem to support the State's position. After all, in *Bohling*, as in the instant case, when a person arrested for drunk driving objected to a blood test, "the officer informed him that restraint would be used if necessary." *Bohling*, 173 Wis. 2d at 535. The arrestee then still refused to sign a consent form, but ultimately submitted to the blood test. *Id.* The supreme court, in a four-to-three decision, reversed this court's decision, which had affirmed the trial court's suppression of the test results. The supreme court concluded

> that the dissipation of alcohol from a person's bloodstream constitutes a sufficient exigency to justify a warrantless blood draw under the following circumstances:   (1) the blood draw is taken at the direction of

431

a law enforcement officer from a person lawfully arrested for a drunk-driving related violation or crime, and (2) there is a clear indication that the blood draw will produce evidence of intoxication.

*Id.* at 547–48. *See also* WIS. STAT. § 343.305(3)(c) (implied consent law "does not limit the right of law enforcement officer to obtain evidence by any other lawful means").

¶ 40.  In *Bohling*, however, the supreme court never addressed the contention Marshall presents here: that the only penalty for refusing under the implied consent law is the revocation of the defendant's operating privileges; that nothing in the implied consent law authorizes an involuntary blood draw. In *Bohling*, the supreme court did not address the dictates of WIS. STAT. §§ 343.305(5) & (9). In *Bohling*, decided two years before this court's decision in *Quelle*, the supreme court did not have the opportunity to address the implications of this court's conclusion that implied consent warnings are "analogous" to *Miranda* warnings.

¶ 41.  And in *Bohling*, the supreme court did not consider that police conduct, such as that in this case, endangers police, those they arrest, and medical personnel, and actually undermines the effective apprehension and prosecution of drunk drivers.

¶ 42.  Inevitably, allowing police to threaten or compel blood draws after refusals would result in dangerous, physical confrontations between drunk drivers and police, and between drunk drivers and the medical personnel responsible for drawing their blood. Certainly, the legislature, delineating specific statutory procedures for an immediate and non-confrontational response to a refusal, could not have intended such a result. *See State v. Gould*, 56 Wis. 2d 808, 812, 202

N.W.2d 903 (1973) (court will reject statutory interpretation that renders absurd result).[3]

¶ 43.    Under the statutory scheme, a refusal is "immediately" met with a powerful response, *see* WIS. STAT. § 343.305(9)(a)—the virtual certainty of license revocation, *and* the virtual certainty that, in the event of a drunk driving trial, the jury will receive compelling evidence of guilt. Indeed, many seasoned prosecutors consider evidence of a refusal to be more powerful, and much less susceptible to impeachment, than evidence of blood-alcohol concentration.[4]

---

[3] In *State v. Zielke*, 137 Wis. 2d 39, 403 N.W.2d 427 (1987), while the supreme court concluded that the failure to advise an arrestee of the right to an alternative test under WIS. STAT. § 343.305(3)(a) did not preclude the police "from obtaining chemical test evidence by alternative constitutional means," *id.* at 41, the supreme court did not address the issue in this case. Indeed, although, a cursory reading of certain *Zielke* passages could support the State's position, it should be noted that, in *Zielke*, the arrestee had *not* refused to take a blood test and the supreme court was never considering the propriety of the police response to a *refusal. See id.* at 44–45.

And in *State v. Krause*, 168 Wis. 2d 578, 484 N.W.2d 347 (Ct. App. 1992), while this court concluded that "the forcible extraction of a blood sample was a reasonable search by fourth amendment standards once [the defendant] refused the test under the implied consent law," *id.* at 583, and that, under the circumstances of the case, the test results were admissible, *id.* at 592, this court did not consider the *statutory* theory Marshall presents.

[4] From 1975 to 1982, the author of this opinion, while employed as a Milwaukee County Assistant District Attorney, prosecuted hundreds of drunk driving cases—approximately ten of them before juries—most with breath test evidence of blood-alcohol concentration, but many with refusals. From 1982 to 1992, the author of this opinion, while a circuit court

¶ 44. Thus, when police promptly respond to a refusal as the statute dictates, they lose nothing in their fight against drunk driving. *See Scales v. State*, 64 Wis. 2d 485, 494, 219 N.W.2d 286 (1974) (implied consent law must not be construed to "inhibit the ability of the state to remove drunken drivers from the highway"). Indeed, they gain. Rather than prolonging their encounter with an arrestee and risking violence by threatening to strap or otherwise compel, officers who "immediately" respond as the statute dictates, will: (1) promptly trigger license revocation; (2) effectively establish evidence of the refusal, so utterly convincing to a jury; and (3) expeditiously complete their duties with that drunk driver and return to the streets to arrest the next one.

¶ 45. No wonder, therefore, that the supreme court has advised that, upon hearing a refusal, an officer should "respond to defendants in a manner that is both direct and polite." *Reitter*, 227 Wis. 2d at 231. No wonder, therefore, that the legislature mandated that "the law enforcement officer," upon a refusal, "shall immediately take possession of the person's license and prepare a notice to revoke," Wis. Stat. § 343.305(9)(a), not that the law enforcement officer shall strap the suspect and have blood forcibly withdrawn.

¶ 46. "[I]t is for the legislature," not the appellate courts, "to add to the statutory scheme." *See Reitter*, 227 Wis. 2d at 230. "Inasmuch as the implied consent law is a statutory creation, it is the legislature ... which should impose duties upon officers in the implied consent setting." *Id.* at 217–18. Likewise, it is the legisla-

judge, presided over approximately fifty drunk driving trials before juries, most with breath test evidence of blood-alcohol concentration, perhaps one or two with blood test evidence, and the rest with refusals.

ture, if it sees fit to do so, that could offer officers the option of strapping a suspect and forcing a blood test.

¶ 47. But do we really want blood? Do we really want to erase the *Miranda*–like bright line demarcating an officer's singular and "immediate" response? Do we really want to force every Wisconsin law enforcement officer to decide whether to force refusing drunk drivers to submit to a blood test? Do we really want to allow the legal framework for combative citizen-police confrontations, and to require medical personnel to draw blood from resistive drunk drivers?

¶ 48. Hopefully, the supreme court will perceive this court's dangerous mistakes. Hopefully, the supreme court will wince at the prospect of police regularly restraining drunk drivers and delivering them to medical personnel for forcible blood draws. And hopefully, the supreme court will restore the statutory bright line, which protects law enforcement officers and, at the same time, strengthens the fair and effective prosecution of drunk drivers.