State of Wisconsin, Plaintiff-Respondent,
v.
Linda L. Middaugh, Defendant-Appellant.
No. 04-0870-CR.
Court of Appeals of Wisconsin.
Opinion Filed: September 1, 2004.
¶1 NETTESHEIM, J.[1]
Linda L. Middaugh appeals pro se from a judgment of conviction for operating while intoxicated, second offense, contrary to WIS. STAT. § 346.63(1)(a). Middaugh raises numerous challenges to her conviction on appeal, all of which we reject. We affirm the judgment.

Background
¶2 On January 24, 2003, the State filed a criminal complaint against Middaugh alleging OWI, second offense, and operating with a prohibited alcohol concentration. The complaint alleged that on December 13, 2002, Officer Charles Beckford of the City of Kiel Police Department observed Middaugh's vehicle traveling at a high rate of speed. Beckford followed Middaugh's vehicle into the parking lot of Larry's Goodtime Inn, where he observed Middaugh exit her vehicle and approach his squad. Beckford observed Middaugh stumble as she exited her vehicle, putting her left hand on the driver's side passenger door to keep her balance. While speaking with Middaugh, Beckford observed that she smelled of intoxicants and had red, glassy, bloodshot eyes. Beckford also observed Middaugh fumble for approximately thirty to forty seconds while trying to get her wallet out of her purse.
¶3 Middaugh refused Beckford's request to perform field sobriety tests and was placed under arrest. She then asked for an attorney. Beckford advised that her request for counsel would be addressed later. Middaugh was then transported to a hospital where she was advised under the implied consent law and asked to provide a sample of her blood. She refused and was issued a Notice of Intent to Revoke Operating Privilege. Middaugh was then subjected to a forced blood draw, which indicated a blood ethanol concentration of 0.202 g/100 ml.
¶4 Middaugh requested a refusal hearing, which the circuit court conducted on September 2, 2003.[2] Following the testimony, the court ruled that Middaugh's refusal was improper and ordered her driving privileges revoked for a period of two years. A written order of revocation was entered that same day.
¶5 On November 19, 2003, a jury found Middaugh guilty of OWI and PAC, contrary to WIS. STAT. § 346.63(1)(a) and (b). Middaugh was later sentenced on the OWI charge and she appeals from that judgment of conviction.

Discussion
¶6 We begin by clarifying what is properly before us on this appeal. Middaugh raises numerous challenges to both her OWI conviction and the circuit court's determination that her refusal was improper. However, Middaugh has appealed only from the OWI conviction, not from the revocation order resulting from the refusal proceeding. We therefore do not address Middaugh's issues relating to the refusal proceeding except as they are relevant to the OWI conviction.[3]State v. Gibson, 2001 WI App 71, ¶10, 242 Wis. 2d 267, 626 N.W.2d 73 ("[T]he refusal to submit to a chemical test under [WIS. STAT.] § 343.305 is a civil matter and is a separate substantive offense from OWI under [WIS. STAT.] § 346.63(1)."
¶7 With that in mind, we now address Middaugh's arguments which pertain to her OWI conviction. In so doing, we note that Middaugh's pro se brief raises a variety of issues, some obvious and others obscure. As to any of Middaugh's arguments that we do not address, we hold that such are inadequately developed or irrelevant to the judgment appealed. See State v. Waste Mgmt. of Wis., Inc., 81 Wis. 2d 555, 564, 261 N.W.2d 147 (1978) ("An appellate court is not a performing bear, required to dance to each and every tune played on an appeal."); State v. Pettit, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (appellate court may "decline to review issues inadequately briefed").

Right to Counsel Prior to Forced Blood Draw
¶8 From the very outset of her encounter with Officer Beckford, Middaugh asked for an attorney. Because this request was not immediately accommodated, Middaugh contends that she was denied her right to counsel and that the forced blood test result should have been suppressed.
¶9 Middaugh's argument has been previously rejected by our supreme court. "In Wisconsin, there is no right under the implied consent statute to consult with an attorney before deciding whether to submit to a chemical test. Because the driver already has consented to the test, it is unnecessary to secure the advice of an attorney about the decision to submit." State v. Reitter, 227 Wis. 2d 213, 239-40, 595 N.W.2d 646 (1999) (citing State v. Neitzel, 95 Wis. 2d 191, 193-94, 206, 289 N.W.2d 828 (1980) (footnote omitted)). While Middaugh expresses some confusion as to the point at which she became subject to the implied consent law, this is not relevant to our determination. Simply put, "the right to counsel does not attach to the stages preceding administration of a chemical test." Reitter, 227 Wis. 2d at 218.

Sufficiency of Evidence
¶10 Middaugh next contends that there was insufficient evidence to support the OWI conviction. As part of her argument, Middaugh challenges the admissibility of the result of the forced blood draw on two grounds.
¶11 Middaugh first contends that the blood test result was inadmissible because it was not obtained under the auspices of the implied consent law. This court addressed the admissibility of a forced blood draw in State v. Marshall, 2002 WI App 73, ¶12, 251 Wis. 2d 408, 642 N.W.2d 571:
[A] forcible warrantless blood draw does not violate the Fourth Amendment if the conditions specified in [State v.] Bohling[, 173 Wis. 2d 529, 533-34, 494 N.W.2d 399 (1993),] are satisfied, see State v. Wodenjak, 2001 WI App 216, ¶10, 247 Wis. 2d 554, 634 N.W.2d 867 .... [W]e are satisfied that even if an arrestee refuses to submit to a voluntary blood test, an officer may acknowledge the refusal, complete the "Notice of Intent to Revoke Operating Privilege" form as provided by WIS. STAT. § 343.305(9)(a), and then proceed with an involuntary blood test as the basis for the operating a motor vehicle with a prohibited blood alcohol concentration (PAC) charge and in support of the operating a motor vehicle while intoxicated charge.
While Middaugh cites to Marshall in support of her argument that the results of the blood draw should not have been admitted at the OWI proceeding, the case actually detracts from her position. Marshall clearly envisions that an involuntary blood test following the officer's compliance with the implied consent law may be employed.[4]Marshall, 251 Wis. 2d 408, ¶12.
¶12 Next, Middaugh argues that because her blood test result was the product of a forced procedure, the result was not entitled to the presumption under WIS. STAT. § 885.235 regarding chemical tests taken within three hours of the operation of the vehicle. Middaugh is again mistaken.
¶13 In construing a statute, our goal is to ascertain the intent of the legislature. State v. Setagord, 211 Wis. 2d 397, 406, 565 N.W.2d 506 (1997). We begin with the language of the statute and if it clearly sets forth the legislature's intent, we apply that language to the facts. Id. WISCONSIN STAT. § 885.235 provides in relevant part:
(1g) In any action or proceeding in which it is material to prove that a person was under the influence of an intoxicant or had a prohibited alcohol concentration or a specified alcohol concentration while operating or driving a motor vehicle ... evidence of the amount of alcohol in the person's blood at the time in question, as shown by chemical analysis of a sample of the person's blood or urine or evidence of the amount of alcohol in the person's breath, is admissible on the issue of whether he or she was under the influence of an intoxicant or had a prohibited alcohol concentration or a specified alcohol concentration if the sample was taken within 3 hours after the event to be proved.
Contrary to Middaugh's assertions, § 885.235 does not distinguish between a chemical test that resulted from a blood draw under the implied consent law or one obtained involuntarily following a refusal. We uphold the circuit court's admission of the blood draw result, which reflected a blood ethanol concentration of 0.202 g/100 ml.
¶14 In addition to the blood test result, the jury heard testimony from Beckford that he first observed Middaugh as she was traveling in excess of the speed limit. Beckford then observed Middaugh stumble as she exited her vehicle. When conversing with Middaugh, Beckford noted that Middaugh had a difficult time standing in one place and that she had an odor of intoxicants on her breath, slurred speech and red, glassy, bloodshot eyes. Beckford also testified that it took Middaugh between thirty to forty seconds to retrieve her wallet from her purse and between fifty to sixty seconds to retrieve her driver's license from her wallet. In addition, Middaugh refused to submit to field sobriety testing. Based on his observations and experience, Beckford believed Middaugh to be under the influence of intoxicants.
¶15 In order for the jury to conclude that Middaugh was guilty of OWI, the State had to prove beyond a reasonable doubt that Middaugh operated a motor vehicle on a highway and was under the influence of an intoxicant at the time of such operation. See WIS JICRIMINAL 2669. "What must be established is that the person has consumed a sufficient amount of alcohol to cause the person to be less able to exercise the clear judgment and steady hand necessary to handle and control a motor vehicle." Id. Moreover, "[i]t is not required that impaired ability to operate be demonstrated by particular acts of unsafe driving. What is required is that the person's ability to safely control the vehicle be impaired." Id.
¶16 We conclude that Beckford's observations coupled with the results of the blood test provided sufficient evidence for the jury to be convinced beyond a reasonable doubt that Middaugh was operating a motor vehicle while intoxicated.

Constitutionality of the Implied Consent Law
¶17 Finally, Middaugh urges this court to "toss" part of the implied consent law. Here again, Middaugh failed to raise this issue in the circuit court and also fails to adequately develop it on appeal. As such, we could reject the argument on this threshold basis. However, we choose to address this issue on the merits. It appears that Middaugh challenges the constitutionality of WIS. STAT. § 343.305 on Fourth Amendment grounds. To that extent, the implied consent law has withstood previous constitutional challenge. See State v. Wintlend, 2002 WI App 314, ¶¶17-18, 258 Wis. 2d 875, 655 N.W.2d 745, review denied, 2003 WI 16, 259 Wis. 2d 104, 657 N.W.2d 708 (Wis. Jan. 14, 2003) (No. 02-0965-CR). This court is without authority to overrule its own opinions. Cook v. Cook, 208 Wis. 2d 166, 189-90, 560 N.W.2d 246 (1997).

Conclusion
¶18 We hold that Middaugh was not denied the right to counsel, that the evidence was sufficient to support the jury's guilty verdict, and that the implied consent law is not unconstitutional as violative of the Fourth Amendment. As noted, we reject Middaugh's remaining arguments as either waived, inadequately briefed, or both. We affirm the judgment of conviction.
By the Court.  Judgment affirmed.
NOTES
[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2001-02). All references to the Wisconsin Statutes are to the 2001-02 version unless otherwise noted.
[2] The circuit court had earlier convened a refusal hearing on June 13, 2003. However, the matter did not proceed to trial because Middaugh and the State entered into a plea agreement by which Middaugh pled no contest to the OWI charge. In exchange, the State agreed to: (1) dismiss the PAC and refusal charges; and (2) cap its sentencing recommendation at twenty days in jail, a fourteen-month suspension of driving privileges and a fine of $400 plus costs. However, the circuit court later granted Middaugh's motion to withdraw her no contest plea, putting all charges back in play.
[3] The refusal issues we do not address are the following: (1) the circuit court lost competency to litigate the refusal proceeding because of the State's failure to adhere to the time deadlines set out in the refusal statute; (2) the State has failed to adequately inform motorists of the enactment of the implied consent law and the obligations it places on motorists suspected of OWI; (3) the circuit court erred by referring to the field sobriety testing at the refusal hearing; and (4) the circuit court erred in stating at the refusal hearing that the Alcoholic Influence Report is completed after the tests or a refusal. None of these issues effects the admissibility of the evidence at Middaugh's OWI trial or the validity of the OWI conviction.

In addition, with respect to Middaugh's contention that the State failed to adequately inform motorists about the content and application of the implied consent law, we note that Middaugh has also waived this argument by failing to raise it before the circuit court. As to the merits, we observe that every person is presumed to know the law and cannot claim ignorance as an excuse. Putnam v. Time Warner Cable, 2002 WI 108, ¶13 n.4, 255 Wis. 2d 447, 649 N.W.2d 626. As our supreme court observed in State v. Neitzel, 95 Wis. 2d 191, 201, 289 N.W.2d 828 (1980):
[T]he accused intoxicated driver has no choice in respect to granting his [or her] consent. He [or she] has, by his [or her] application for a license, waived whatever right he [or she] may otherwise have had to refuse to submit to chemical testing. It is assumed that, at the time a driver made application for his [or her] license, he [or she] was fully cognizant of his [or her] rights and was deemed to know that, in the event he [or she] was later arrested for drunken driving, he [or she] had consented, by his [or her] operator's application, to chemical testing under the circumstances envisaged by the statute.
Finally, although unrelated to the refusal proceeding, we also decline to address Middaugh's additional argument regarding the treatment she received while in the county jail the night she was arrested for OWI. Middaugh makes no showing as to how the conditions of her confinement had any bearing on the OWI proceedings.
[4] We note that Middaugh does not argue that the requirements of a warrantless forced blood draw under State v. Bohling, 173 Wis. 2d 529, 533-34, 494 N.W.2d 399 (1993), were not met.