IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
October 7, 2014 Session
Remanded by the Supreme Court on November 22, 2016

**STATE OF TENNESSEE v. MELVIN BROWN**

**Interlocutory Appeal from the Criminal Court for Shelby County**
**No. 13-00735    W. Mark Ward, Judge**

_____

**No. W2014-00162-CCA-R9-CD**

_____

The Defendant, Melvin Brown, was indicted by the Shelby County Grand Jury for driving under the influence ("DUI"); DUI with a blood alcohol concentration of .20% or more; violation of the implied consent law; reckless driving; and driving on a revoked, suspended, or cancelled license.  The trial court granted the Defendant's motion to suppress the results of his blood test on the basis that Tennessee Code Annotated section 55-10-406 was unconstitutional[1] and that there were no exigent circumstances that prevented the officers from obtaining a warrant.  Thereafter, the State sought and was granted permission to file an interlocutory appeal, contending that Tennessee Code Annotated section 55-10-406 was constitutional, that exigent circumstances justified the warrantless blood draw, and that the warrantless blood draw was permissible pursuant to the implied consent law.  Upon review, we reversed the portion of the trial court's judgment declaring Code section 55-10-406(f)(1) unconstitutional but affirmed the trial court's suppression of the results of the warrantless blood draw because no exception to the warrant requirement existed.  State v. Melvin Brown, No. W2014-00162-CCA-R9-CD, 2015 WL 1951870 (Tenn. Crim. App. Apr. 30, 2015), perm. app. granted and remanded, No. W2014-00162-SC-R11-CD (Tenn. Nov. 22, 2016) (order).  On November 22, 2016, the Tennessee Supreme Court granted the State's application for permission to appeal and remanded the case to this court for reconsideration in light of the supreme

---

[1] The trial court's order denying the motion to suppress does not explicitly rule on the constitutionality of Code section 55-10-406.  However, in a hearing prior to the drafting of the order by the State, the trial court expressed its conclusion that the statute was unconstitutional.  The court reasoned:

> [I]mplicit in the ruling [granting the Defendant's suppression motion] is that [Tennessee Code Annotated section 55-10-406(f)(1)] is unconstitutional, but there are some good arguments to be made that it might not be, but I decided to err [in] favor of ruling it unconstitutional, until we get a ruling to the contrary.

court's opinion in State v. Reynolds, 504 S.W.3d 283 (Tenn. 2016).[2] State v. Melvin Brown, No. W2014-00162-SC-R11-CD (Tenn. Nov. 22, 2016) (order). Upon reconsideration, we conclude that the good-faith exception to the exclusionary rule adopted in Reynolds applies to this case and that suppression of the Defendant's test results was not required. Therefore, the trial court's judgment suppressing the test results of the warrantless blood draw is reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Criminal Court Reversed and Remanded**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and TIMOTHY L. EASTER, JJ., joined.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Senior Counsel; Amy P. Weirich, District Attorney General; and Michael McCusker, Assistant District Attorney General, for the Appellant, State of Tennessee.

Claiborne H. Ferguson, Memphis, Tennessee (on appeal), and Varonica R. Cooper, Memphis, Tennessee (at trial), for the Appellee, Melvin Brown.


**OPINION ON REMAND**

This case concerns a December 6, 2011 car accident involving injuries to a third party that occurred in Memphis, Tennessee. The Defendant, who caused the accident, refused the officer's request to submit to a blood test to determine his blood alcohol concentration, and his blood was taken, without a warrant and over his objections, pursuant to Tennessee Code Annotated section 55-10-406(f)(1) (Supp. 2011).

The Defendant subsequently filed a motion to suppress the results of his blood test, contending that no exigent circumstances justified the warrantless search and that Code section 55-10-406(f) was unconstitutional because it allowed officers to conduct warrantless searches without a valid exception to the warrant requirement. The State filed a response, arguing that consent to the search was not required because the Defendant had given implied consent to the mandatory blood draw, pursuant to the implied consent law, at the time he received his Tennessee driver's license. The State also asserted that because the officers' investigation of the accident prevented them from

---

[2] Because of a clerical error in the court's CTRACK system that monitors pending matters, official notice of the remand was not received until September 19, 2017.

having time to secure a search warrant, exigent circumstances existed, making the search permissible under Missouri v. McNeely, 569 U.S. 141 (2013).

At the suppression hearing, Officer Christopher Draper of the Memphis Police Department (MPD) testified that he responded to the scene of a three-car accident on December 6, 2011, around 9:00 p.m. The Defendant was suspected of DUI, and Officer Draper sat with the Defendant for approximately thirty minutes until certified DUI Officer Casey Kirby arrived on the scene. Officer Draper assisted Officer Kirby with some of the paperwork for the DUI investigation, including the completion of the "Standard Field Sobriety Form." Officer Draper noted in his report that the Defendant had obvious signs of alcohol impairment, including a strong odor of alcohol, watery eyes, and slurred speech. He recalled that the accident occurred in a "[v]ery busy intersection" and required vehicles to be towed.

On cross-examination, Officer Draper testified that there were two other officers at the scene investigating the accident while he and Officer Kirby investigated the Defendant for DUI. Officer Draper agreed that the Defendant had not been injured in the accident or transported to the hospital and that this DUI stop was "pretty much standard routine." He estimated that the Defendant remained at the scene for an hour and a half before being transported to the police station.

Officer Casey Kirby, a trained DUI officer with the MPD DUI Unit, testified that he responded to the scene after officers there requested a DUI officer. Upon his arrival, Officer Kirby and another officer took the Defendant to a parking lot adjacent to the accident. He observed that the Defendant had a strong odor of alcohol, bloodshot and watery eyes, slurred speech, and a slow reaction time. He recalled that the Defendant was swaying and staggering, but because the Defendant complained of leg pain, Officer Kirby did not ask the Defendant to perform a walk and turn test or one leg stand test. Officer Kirby advised the Defendant of the implied consent law and requested that he submit to a breath test, but the Defendant refused. Because a third party had been injured in the accident, Officer Kirby determined that the Defendant was subject to a mandatory blood draw pursuant to Tennessee Code Annotated section 55-10-406(f)(1). He explained, "Since [the Defendant] was involved in an accident where there w[ere] injuries to a third party . . . the State law at the time advised me that I'm able to go ahead and take . . . a mandatory blood draw if he refuses . . . a BAC test." When Officer Kirby informed the Defendant that the blood test was mandatory, the Defendant continued to refuse the test. Thereafter, Officer Kirby transported the Defendant to the police station where a nurse met them and took a blood sample from the Defendant.

Officer Kirby testified that at the time of this incident, it was not MPD's standard operating procedure to obtain warrants for blood draws and that he understood the law to

be that warrants were not required for mandatory blood draws. However, he said that he had recently begun obtaining warrants for all mandatory blood draws and that it generally took "about two hours to get the warrant in hand" and "another thirty, maybe forty minutes" for a nurse to come to the station and take a blood sample. On cross-examination, he agreed that this case was a "pretty routine DUI stop." He also acknowledged that he could obtain a warrant at any hour of the day.

At the conclusion of this hearing, the trial court ruled that it was granting the motion to suppress because there were no exigent circumstances that prevented the officers from obtaining a warrant. The trial court also expressed its belief that the implied consent statute would be declared unconstitutional and that a good faith exception to the exclusionary rule would not be adopted. On November 4, 2013, the trial court entered an order granting the Defendant's motion to suppress, which included the following findings of fact and conclusions of law:

> [T]he State presented the testimony of Memphis Police Officers Christopher Draper and Casey Kirby. Officer Kirby testified that he responded to the scene of the motor vehicle accident in his capacity as a DUI Detection Officer. At the request of the arresting officer, Officer Kirby investigated the Defendant for suspicion of driving under the influence. Subsequently, Officer Kirby read the Defendant the Tennessee Implied Consent Law at which time the Defendant refused to submit to a breath or blood test.
>
> Thereafter, Officer Kirby testified that he made the decision to draw blood pursuant to Tennessee Code Annotated [section] 55-10-406 (hereinafter referred to as T.C.A.) upon his reasonable, articulable suspicion that the Defendant was involved in a motor vehicle accident with injuries to a third party while said Defendant was under the influence of alcohol.
>
> Upon review of the evidence presented by the State, this Court concludes that exigent circumstances were not presented that would have prevented the officers from getting a warrant for the blood draw from the Defendant pursuant to Schmerber v. California, 384 U.S. 757 (1966). Instead, the Court finds that the officers proceeded to make a warrantless blood draw while acting pursuant to the dictates of T.C.A. § 55-10-406, which allows for a mandatory blood draw in cases where there is a motor vehicle accident with injuries to a third party.
>
> WHEREFORE, PREMISES CONSIDERED, this Court finds that the officers proceeded without [a] warrant in violation of the Fourth

Amendment of the United States Constitution and Article I, § 7 of the Tennessee Constitution, and therefore grants the Defendant's Motion to Suppress the blood samples drawn from the Defendant pursuant to Missouri v. McNeely, [569 U.S. 141] (2013).

After the State sought and was granted permission to file an interlocutory appeal, this court reversed the portion of the trial court's judgment declaring Code section 55-10-406(f)(1) unconstitutional but affirmed the trial court's suppression of the results of the warrantless blood draw after concluding that no exception to the warrant requirement existed. Melvin Brown, 2015 WL 1951870, at *7. The Tennessee Supreme Court then entered an order granting the State's application for permission to appeal and remanding the case to this court for reconsideration in light of Reynolds. Melvin Brown, No. W2014-00162-SC-R11-CD (Tenn. Nov. 22, 2016) (order).

In reconsidering this case, we recognize that the scope of our review is controlled by the Tennessee Supreme Court's remand order. Moreover, our previous conclusions in this case, that Code section 55-10-406(f)(1) is constitutional and that no exception to the warrant requirement existed at the time of the search, are binding upon this panel of the court.

## ANALYSIS

On remand, we are tasked with reconsidering the Defendant's case in light of Reynolds. As we will explain, because the good-faith exception to the exclusionary rule adopted in Reynolds applies to this case, the suppression of the Defendant's test results was not required.

Both the Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution protect citizens from unreasonable searches and seizures. U.S. Const. amend. IV; Tenn. Const. art. 1, § 7. Because warrants protect against unreasonable searches, law enforcement officials must generally obtain a warrant prior to conducting a search. Kentucky v. King, 563 U.S. 452, 459 (2011); see Birchfield v. North Dakota, 136 S. Ct. 2160, 2181 (2016) (noting that warrants not only "ensure that a search is not carried out unless a neutral magistrate makes an independent determination that there is probable cause to believe that evidence will be found" but also "limit[] the intrusion on privacy by specifying the scope of the search—that is, the area that can be searched and the items that can be sought"); State v. Meeks, 262 S.W.3d 710, 722 (Tenn. 2008) ("[A]s a general matter, law enforcement officials cannot conduct a search without having first obtained a valid warrant."). Consequently, a warrantless search or seizure is presumed unreasonable and evidence obtained as a result will be suppressed "unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." State v. Yeargan, 958 S.W.2d

626, 629 (Tenn. 1997) (citing Coolidge v. New Hampshire, 403 U.S. 443, 454-55 (1971); State v. Bartram, 925 S.W.2d 227, 229-30 (Tenn. 1996)). The generally recognized exceptions to the warrant requirement include "search incident to arrest, plain view, stop and frisk, hot pursuit, search under exigent circumstances, and . . . consent to search." State v. Cox, 171 S.W.3d 174, 179 (Tenn. 2005).

The taking of a blood sample is a search. Birchfield, 136 S. Ct. at 2173; McNeely, 569 U.S. at 148; State v. Scarborough, 201 S.W.3d 607, 616 (Tenn. 2006); Schmerber v. California, 384 U.S. 757, 767-68 (1966). "[T]he physical intrusion occasioned by a blood draw 'infringes an expectation of privacy' and '"[t]he ensuing chemical analysis of the sample . . . is a further invasion of the tested [individual's] privacy interests.'" Scarborough, 201 S.W.3d at 616 (quoting Skinner v. Ry. Labor Executives' Assn., 489 U.S. 602, 616 (1989)); see Birchfield, 136 S. Ct. at 2178 (stating that "a blood test, unlike a breath test, places in the hands of law enforcement authorities a sample that can be preserved and from which it is possible to extract information beyond a simple BAC reading" and that "[e]ven if the law enforcement agency is precluded from testing the blood for any purpose other than to measure BAC, the potential remains and may result in anxiety for the person tested"); McNeely, 569 U.S. at 148 ("Such an invasion of bodily integrity implicates an individual's most personal and deep-rooted expectations of privacy." (internal quotations marks omitted)). An accused's blood cannot be taken or analyzed unless the search is reasonable pursuant to the Fourth Amendment. Birchfield, 136 S. Ct. at 2173; see Schmerber, 384 U.S. at 767.

In Schmerber, 384 U.S. at 770-772, the United States Supreme Court upheld a warrantless blood draw in a drunk-driving case after concluding that exigent circumstances existed. In that case, the defendant was injured in a car accident and was transported to a hospital for treatment, where he was arrested. Id. at 758. The officer, who had not obtained a warrant, instructed a physician at the hospital to draw the defendant's blood, which was tested to determine the defendant's blood alcohol concentration. Id. at 758-59. The test results were then used to convict the defendant of DUI. Id. In upholding the warrantless blood draw in that case, the Court concluded:

> The officer in the present case . . . might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened 'the destruction of evidence,' Preston v. United States, 376 U.S. 364, 367, 84 S. Ct. 881, 883, 11 L. Ed. 2d 777. We are told that the percentage of alcohol in the blood begins to diminish shortly after drinking stops, as the body functions to eliminate it from the system. Particularly in a case such as this, where time had to be taken to bring the accused to a hospital and to investigate the scene of the accident, there was no time to seek out a magistrate and secure

a warrant. Given these special facts, we conclude that the attempt to secure evidence of blood-alcohol content in this case was an appropriate incident to petitioner's arrest.

Id. at 770.

Thereafter, some states interpreted Schmerber narrowly, concluding that it stood for the proposition that the totality of the circumstances test should be used when determining whether exigent circumstances existed. See Reynolds, 504 S.W.3d at 305 (citing State v. Johnson, 744 N.W.2d 340 (Iowa 2008); State v. Rodriguez, 156 P.3d 771 (Utah 2007)). However, our Supreme Court has concluded that, Tennessee, along with several other states, "interpreted Schmerber broadly as establishing a per se rule equating alcohol dissipation to exigent circumstances justifying a warrantless blood draw, so long as the officer had probable cause to believe the motorist was driving while intoxicated." Id. (citing State v. Humphreys, 70 S.W.3d 752, 760-61 (Tenn. Crim. App. 2001) (citing State v. Shriner, 751 N.W.2d 538 (Minn. 2008); State v. Machuca, 227 P.3d 729 (Or. 2010) (en banc); State v. Bohling, 494 N.W.2d 399 (Wis. 1993)).

The tension regarding Schmerber's scope continued until 2013, when the United States Supreme Court decided McNeely, wherein it considered whether the natural metabolization of the alcohol in the blood created a "per se exigency that justifies an exception to the Fourth Amendment's warrant requirement for nonconsensual blood testing in all drunk-driving cases." McNeely, 569 U.S. at 145. Ultimately, the McNeely Court held that the natural dissipation of alcohol in the blood does not create a per se exigency and clarified that "exigency in this context must be determined case by case based on the totality of the circumstances." Id. The Court stressed that "where police officers can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, the Fourth Amendment mandates that they do so." Id. at 152-53 (citing McDonald v. United States, 335 U.S. 451, 456 (1948) ("We cannot . . . excuse the absence of a search warrant without a showing by those who seek exemption from the constitutional mandate that the exigencies of the situation made [the search] imperative.")).

Subsequently, on November 3, 2016, the Tennessee Supreme Court decided Reynolds, wherein it considered whether a warrantless blood draw violated a defendant's right to be free from unreasonable searches and seizures. Reynolds, 504 S.W.3d at 288. In that case, the defendant was involved in a single-car accident that killed two of the three passengers in her vehicle. Id. at 289. A deputy, after speaking with the Defendant and the surviving passenger, determined that the defendant was driving the car at the time of the accident. Id. Believing that the defendant had verbally consented to the blood draw at the hospital, the deputy did not obtain a warrant and did not advise the defendant

-7-

that she could refuse the blood draw or of the legal consequences of refusal before asking medical personnel to obtain a sample of the defendant's blood.  Id.

The Reynolds court concluded that the warrantless blood draw violated the defendant's right to be free from unreasonable searches and seizures because the record failed to establish that the defendant had the capacity to revoke her statutory implied consent.  Id. at 309.  However, after recognizing that the United States Supreme Court had adopted good-faith exceptions to the exclusionary rule in several cases, the Tennessee Supreme Court then considered whether it was appropriate to adopt a good-faith exception to violations of article I, section 7 of the Tennessee Constitution.  Id. at 310-12.

The Reynolds court specifically noted the holding in Davis v. United States, that "'[e]vidence obtained during a search conducted in reasonable reliance on binding precedent is not subject to the exclusionary rule.'"  Id. at 311 (citing Davis v. United States, 564 U.S. 229, 241 (2011)).  The Tennessee Supreme Court then expressly adopted the good-faith exception articulated in Davis, explaining that this good-faith exception "applies only when the law enforcement officers' action is in objectively reasonable good faith reliance on 'binding appellate precedent' that 'specifically authorizes a particular police practice.'"  Id. at 313 (quoting Davis, 564 U.S. at 241).  In particular, the Tennessee Supreme Court concluded that "[p]rior to McNeely, no warrant was required for a blood draw in drunk driving cases because Tennessee courts had interpreted Schmerber as establishing a broad categorical rule that the natural dissipation of alcohol within the bloodstream presents an exigent circumstance, justifying a warrantless blood draw in every drunk driving case."  Id. at 314 (citing Humphreys, 70 S.W.3d at 761).  The court then applied this good-faith exception to Reynold's case, concluding that the test results were not required to be suppressed because they were obtained in objectively reasonable good-faith reliance on binding precedent that exigent circumstances justified the warrantless blood draw.  Id. at 314.

At the time of the warrantless blood draw in this case, the implied consent statute provided the following:

> If a law enforcement officer has probable cause to believe that the driver of a motor vehicle involved in an accident resulting in the injury or death of another has committed [the offense of driving under the influence], [vehicular homicide] or [aggravated vehicular homicide], the officer shall cause the driver to be tested for the purpose of determining the alcohol or drug content of the driver's blood.  The test shall be performed in accordance with the procedure set forth in this section and shall be

-8-

performed regardless of whether the driver does or does not consent to the test.

T.C.A. § 55-10-406(f)(1) (Supp. 2011) (amended 2012, 2013, 2016, and 2017).

Here, the Defendant's warrantless blood draw occurred on December 6, 2011, which was prior to the United States Supreme Court's decision in <u>McNeely</u> and during the period when <u>Schmerber</u> was still binding precedent. After reconsidering this case in light of <u>Reynolds</u>, we conclude that Officer Kirby's action in obtaining the Defendant's blood without a warrant was in objectively reasonable good faith reliance on Tennessee's broad interpretation of <u>Schmerber</u>, which specifically authorized that police practice. Because the search in this case occurred prior to <u>McNeely</u> and because Officer Kirby acted in objectively reasonable good faith reliance on binding appellate precedent in conducting the search, we conclude that the good-faith exception adopted in <u>Reynolds</u> applies to this case and that the trial court's suppression of the Defendant's test results was not required. Consequently, the judgment of the trial court suppressing the test results of the warrantless blood draw is reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion.

## <u>CONCLUSION</u>

Upon reconsideration of this case in light of <u>Reynolds</u>, we reverse the judgment of the trial court suppressing the test results of the warrantless blood draw and remand the case to the trial court for further proceedings consistent with this opinion.

_____
CAMILLE R. McMULLEN, JUDGE